# EXHIBIT A

## PROMISSORY NOTE

| | |
|---|---|
| $325,000.00 | Los Altos, California |
| | February 17, 2015 |

FOR VALUE RECEIVED, the undersigned, **LILIA CHAVEZ** ("Maker" or "Borrower"), having an address at, 1025 Kitchener Circle, San Jose, CA 95121, promises to pay to the order of **MILESTONE FINANCIAL, LLC**, a California limited liability company dba Alviso Funding ("Lender"), authorized to do business in the State of California (Lender and its successors and assigns who become holders of this Note are hereinafter collectively referred to as "Holder"), the principal sum of **THREE HUNDRED TWENTY-FIVE THOUSAND AND 00/100ths DOLLARS ($325,000.00),** together with interest thereon from the date of this Note up to, but not including, the date the Loan is paid in full, at a rate per annum equal to the Interest Rate, except as otherwise provided.

1. <u>Definitions</u>. The following terms shall have the meanings set forth below. Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in the other Loan Documents.

   <u>Business Day</u>: Any day of the week on which commercial banks are authorized to be open (other than Saturdays) or not required by Laws to close in the state the Property is located or in the state where payments made by Maker are received.

   <u>Deed of Trust</u>: That certain Deed of Trust, Security Agreement and Fixture Filing with Assignment of Rents and Proceeds of even date herewith executed by Maker as "Trustor" to the benefit of Lender as "Beneficiary" as security for repayment of this Note.

   <u>Default Rate</u>: A rate of interest per annum equal to the lesser of (i) the maximum rate allowed to be charged by Holder under applicable law, or (ii) the sum of the then-current Interest Rate plus six (6) percentage points.

   <u>Interest Rate</u>: A rate of interest equal to **ELEVEN AND 74/100THS** percent **(11.74%)** per annum.

   <u>Loan Documents</u>: This Note, the Deed of Trust, and all other security and other agreements executed by Maker in connection with the Loan.

   <u>Maturity Date</u>: **MARCH 31, 2017**.

   <u>Monthly Due Date</u>: The due date for monthly payments of principal and interest on this Note pursuant to Section 2 below.

   <u>Note</u>: This Promissory Note.

   <u>Principal Balance</u>: The principal balance of this Note from time to time outstanding.

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 2 of 44

2. <u>Payments</u>.

(a)     Commencing on the **FIRST (1st)** day of **APRIL, 2015,** and continuing on the **FIRST (1st) DAY** of each calendar month thereafter through and including the **THIRTY-FIRST (31st) day of MARCH, 2017,** monthly interest only payments in the amount of **THREE THOUSAND ONE HUNDRED SEVENTY-NINE AND 58/100THS ($3,179.58)** shall be due and payable. The entire unpaid Principal Balance, plus accrued interest and other amounts payable under the Loan Documents, shall be due and payable in full on the Maturity Date.

(b)     In addition, at the close of escrow for the Loan (the "Close of Escrow"), Maker shall pay to Lender an amount equal to all accrued interest (if any), at the Interest Rate, on the Principal Balance for the period from and including the Close of Escrow through and including **MARCH 1st, 2015.**

(c)     **THIS LOAN IS PAYABLE IN FULL ON THE MATURITY DATE SET FORTH HEREIN** MAKER HEREBY ACKNOWLEDGES AND AGREES THAT A SUBSTANTIAL PORTION OF THE ORIGINAL PRINCIPAL SUM EVIDENCED BY THIS NOTE WILL MAY BE OUTSTANDING AND DUE ON THE MATURITY DATE IN THE FORM OF A BALLOON PAYMENT. MAKER HAS REVIEWED AN AMORTIZATION SCHEDULE FOR THE LOAN AND UNDERSTANDS THE AMOUNT WHICH WILL BE OWED ON THE MATURITY DATE.

(d)     MAKER MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THIS NOTE TOGETHER WITH ANY UNPAID INTEREST, COSTS AND OTHER SUMS DUE UNDER THE LOAN DOCUMENTS ON THE MATURITY DATE. MAKER UNDERSTANDS THAT HOLDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. MAKER UNDERSTANDS THAT IT WILL BE REQUIRED TO PAY THE BALLOON PAYMENT FROM OTHER RESOURCES THAT MAY BE AVAILABLE TO IT.]]

3. <u>Treatment of Payments</u>.

(a)     All payments under this Note shall be made, without offset or deduction, (i) in lawful money of the United States of America at the following address (or such other address as Holder may notify Maker of from time to time), (ii) in immediately available federal funds, and (iii) if received by Holder prior to 2:00 p.m. local time at such place, shall be credited on that day or else, at Holder's option, shall be credited on the next Business Day:

> c/o AFTS
> P.O. Box 34108
> Seattle, WA 98124-1108

(b)     The Interest Rate shall be calculated on a 365-day year basis, by applying the then-current Interest Rate over the number of days in a year, multiplied by the outstanding Principal Balance, multiplied by the actual number of days the Principal Balance is outstanding. Payments from Maker to Holder under this Note shall be applied first to any expense reimbursements under the Loan Documents, then to any Late Charges, then to accrued and unpaid interest and the balance to the Principal Balance due thereon.

(c)     Maker shall not send Holder payments marked "paid in full", "without recourse", or similar language. If Maker sends such a payment, Holder may accept it without losing any of Holder's rights under this Note, and Maker will remain obligated to pay any further amount owed to Holder.

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 3 of 44

(d)    Maker shall pay a fee to Holder in the amount of $25.00 if Maker makes a payment and the check or preauthorized charge with which Maker pays is later dishonored. Thereafter, Holder, at its option, may elect to demand that all remaining payments due under this Note shall be paid in the form of certified funds, wire, cashier's check or money order.

(e)    If Holder elects to periodically provide to Maker any statements setting forth the transactions arising hereunder or the outstanding Principal Balance (without undertaking any duty or obligation to do so), then each statement shall be considered correct and binding upon Maker, absent manifest error, as an account stated, except to the extent that Holder receives, within thirty (30) days after the mailing of such statement, written notice from Maker of any specific exceptions by Maker to that statement.

4.    Late Charges; Default Rate.

(a) If Maker fails timely to pay any sum due and payable under this Note within ten (10) days after the date due, a late charge equal to ten percent (10.000%) of each such sum (the "Late Charge") shall be immediately due and payable. Maker acknowledges and agrees that its failure to make timely payments will result in Holder incurring additional expense in servicing the Loan, that it is extremely difficult and impractical to ascertain the extent of such damages and that the Late Charge represents a fair and reasonable estimate, considering all of the circumstances existing on the date of the execution of this Note, of the costs that Holder will incur by reason of such late payment. Acceptance of any Late Charge shall not constitute a waiver of the default with respect to the late payment, and shall not prevent Holder from exercising any of the other rights or remedies available hereunder or at law or in equity. Maker need pay a Late Charge only once with respect to any specific late payment.

(b) Maker further acknowledges and agrees that during the time that any payment of principal, interest or other amount due under this Note shall be delinquent (including without limitation any balloon payment), Holder will incur additional costs and expenses attributable to its loss of use of the money due and to the adverse impact on Holder's ability to meet its other obligations and avail itself of other opportunities. Maker agrees that it is extremely difficult and impractical to ascertain the extent of such expenses, and Maker therefore agrees that upon the occurrence of an Event of Default, interest at the Default Rate shall accrue on the Indebtedness, regardless of whether there has been an acceleration of the maturity of the Indebtedness.

5.    Event of Default. The occurrence of an Event of Default under any Loan Document shall constitute an Event of Default under this Note. Upon the occurrence of an Event of Default, including the failure of Maker to observe the provisions of Paragraph 4.2 of the Deed of Trust, Holder, at its option, may cause the Principal Balance, together with all unpaid accrued interest and any other sums evidenced or secured by this Note or any Loan Document, to be immediately due and payable, without further presentment, demand, protest or notice of any kind, by so notifying Maker in writing.

6.    Security. This Note is secured by the Deed of Trust and the other Loan Documents, which contain provisions for the acceleration of the maturity of this Note upon the occurrence of certain described events.

7.    Holder's Rights; No Waiver by Holder. The rights, powers and remedies of Holder under this Note shall be in addition to all rights, powers and remedies given to Holder under the Loan Documents and any other agreement or document securing or evidencing the Indebtedness or by virtue of any statute or rule of law, including the California Uniform Commercial Code. All such rights, powers and remedies shall be cumulative and may be exercised successively or concurrently in Holder's sole discretion without impairing Holder's security interest, rights or available remedies. Any forbearance, failure or



delay by Holder in exercising any right, power or remedy shall not preclude further exercise thereof, and every right, power or remedy of Holder shall continue in full force and effect until such right, power or remedy is specifically waived in a writing executed by Holder. Maker waives any right to require Holder to proceed against any Person or to exhaust all or any part of the Property or to pursue any remedy in Holder's power.

8.    <u>Maker's Waivers</u>. Maker and any endorsers of this Note, and each of them, hereby waive diligence, demand, presentment for payment, notice of non-payment, protest and notice of protest, and specifically consent to and waive notice of any renewals or extensions of this Note, whether made to or in favor of Maker or any other person or persons. Maker and any endorsers of this Note expressly waive all right to the benefit of any statute of limitations and any moratorium, reinstatement, marshaling, forbearance, extension, or appraisement now or hereafter provided by the Constitution and the laws of the United States and of any state thereof, as a defense to any demand against Maker or any such endorsers, to the fullest extent permitted by law.

9.    <u>Transfers by Holder</u>. This Note, and/or any interest in this Note and/or the Loan Documents may be hypothecated, transferred or assigned by Holder without the prior consent of Maker.

10.    <u>Amendment</u>. This Note may be amended or modified only by an instrument in writing which by its express terms refers to this Note and which is duly executed by the party sought to be bound thereby.

11.    <u>Successors and Assigns</u>. This Note shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and permitted assigns.

12.    <u>Governing Law/Venue</u>. This Note shall be governed by and construed in accordance with the laws of the State of California, in accordance with the internal laws of the State of California, without regard to conflicts of laws and principles. In the event of any action or proceeding arising out of or in connection with this Note, Maker agrees upon Holder's request to submit to the jurisdiction of the courts of Santa Clara County, California.

13.    <u>Time</u>. Time is of the essence with respect to each and every term and provision of this Note.

14.    <u>Usury</u>. Notwithstanding any provision herein, the total liability for payments in the nature of interest, additional interest, or other charges, under this Note or any other Loan Document, shall not exceed the applicable limits imposed by any applicable state or Federal interest rate laws. If any such payments in the nature of interest, additional interest, and other charges made hereunder or under any other Loan Documents are held to be in excess of the applicable limits imposed by any applicable state or Federal laws, it is agreed that any such amount held to be in excess shall be considered payment of principal and the Principal Balance shall be reduced by such amount in the inverse order of maturity so that the total liability for payments in the nature of interest, additional interest and other charges, shall never exceed the applicable limits imposed by any applicable state or Federal interest rate laws in compliance with the desires of Holder and Maker as set forth herein.

15.    <u>Notices</u>. All notices, consents and other communications required or permitted by this Note shall be in writing and shall be given in the manner set forth in the Deed of Trust.

16.    <u>Attorneys' Fees</u>. Maker agrees to pay all costs, including actual attorneys' fees and expenses incurred in

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 5 of 44

good faith (including court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses), incurred by Holder in enforcing payment or collection of this Note or the terms of any Loan Document, whether or not suit is filed, including without limitation fees in obtaining legal advice regarding Holder's rights and remedies, and all costs and fees incurred in obtaining relief from any stay or injunction.

17. <u>General Partner Liability</u>. Notwithstanding any contrary provision of applicable law, each general partner in any partnership that is a constituent part of Maker or is a constituent part of any constituent entity of Maker, agrees that Holder need not exhaust the partnership assets of such partnership before executing upon the assets of such general partner in satisfaction of the obligations evidenced hereby or by any other document, instrument or agreement entered into by such partnership in connection with the loan evidence by this Note, but may execute upon such general partner's assets prior to, at the same time as, or after executing upon the partnership assets of such partnership. Each such general partner shall be jointly and severally liable for such obligations with all other persons and entities liable therefor. Upon Holder's request, Maker shall cause each and every person or entity becoming a general partner after the date of this Note to execute an instrument agreeing to the provisions of this Section 17.

18. <u>Joint and Several Liability</u>. If Borrower consists of more than one person and/or entity, the liability of each such person and/or entity under this Note shall be joint and several.

19. <u>Representations and Warranties</u>. Borrower represents and warrants that the proceeds of the loan evidenced by this Note (a) are strictly for business, commercial, or investment purposes ONLY, and (b) will not be used primarily for agricultural, farming personal, family, household or other consumer purposes. Maker acknowledges that this Note was negotiated and arranged by a licensed California real estate broker.

20. <u>Due on Sale Provisions</u>. The Deed of Trust contains the following provisions:

"<u>Prohibited Transfers</u>. Trustor shall not participate in, and shall not cause, allow or otherwise permit, a Transfer without the prior written consent of Beneficiary, which consent may be given or withheld for any reason (or for no reason) or given conditionally (including a requirement that the permitted transferee assume in writing, in form and substance satisfactory to Beneficiary in its sole discretion, all of Trustor's Obligations under the Loan Documents and agree to be bound thereby), as determined by Beneficiary in its sole and absolute discretion, and any default under, failure to observe, or breach of the provisions of this <u>Paragraph 4.2</u> shall constitute an immediate Event of Default hereunder and, at the option of Beneficiary, Beneficiary may accelerate the Indebtedness whereby the entire Indebtedness (including any Prepayment Premium) shall become immediately due and payable. Any assumption of Trustor's obligations hereunder shall not, however, release any Loan Party from any liability under the Loan Documents. Consent to any such Transfer by Beneficiary shall not be deemed a waiver of Beneficiary's right to require such consent to any further or future Transfers.

<u>Transfer</u>: Any of the following:

(i) a sale, conveyance, assignment, transfer, alienation, or other disposition of the Property, of any kind (other than Leases), or any other transaction the result of which is, directly or indirectly, to divest Trustor of any portion of or interest in its title to the Property, voluntarily or involuntarily;

(ii) a mortgage, conveyance of security title, or encumbrance of the Property, or any interest therein in

Case: 17-51958  Doc# 28-2  Filed: 09/26/17  Entered: 09/26/17 16:23:25  Page 6 of 44

any manner (whether direct or indirect, voluntary or involuntary, but excluding the imposition of mechanics' or materialman's liens);

(iii) a merger, consolidation or dissolution involving, or the sale, transfer or assignment of all or substantially all of, the assets of Trustor, or any general partner or member of Trustor;

(iv) an assignment, transfer, pledge, voluntary or involuntary sale, or encumbrance (at one time or over any period of time) of ten percent (10%) or more of (A) the beneficial interest in Trustor, (B) the voting stock or beneficial interest of any corporation or limited liability company which is a general partner or member of Trustor, or any corporation or limited liability company directly or indirectly owning ten percent (10%) or more of any such corporation or limited liability company, or (C) the ownership interest of any owner of ten percent (10%) or more of the beneficial interests of Trustor if Trustor is a trust;

(v) a transfer of any general partnership, managing member or controlling interest in Trustor, in an entity which is in Trustor's chain of ownership and which is derivatively liable for the obligations of Trustor, or in any entity that has the right to participate directly or indirectly in the control of the management or operations of Trustor;

(vi) a conversion of any such general partnership interest to a limited partnership interest;

(vii) a change, removal, or resignation of any general partner of Trustor if Trustor is a partnership; or

(viii) a change, removal, or resignation of any managing member (or if no managing member, any member) of Trustor if Trustor is a limited liability company."

21. **REVIEW BY LEGAL COUNSEL. Maker warrants, covenants and acknowledges to Lender that each person executing below on behalf of the Maker has obtained legal counsel and advice of their own choice, and has had such counsel review this document prior to executing below. Each fully understands their rights and obligations hereunder, and each party has read and reviewed all the terms and conditions of this Note and the each of the Loan Documents, and each party is entering into this Note freely and voluntarily and in the absence of fraud, undue influence, coercion or duress of any kind.**

**Do not sign this Note, the Deeds of Trust and/or any of the other Loan Documents until you have read and understood all the information contained in this document. Review this and all legal documents with an attorney and/or accountant of your choice.**

22. Prepayment.

(a) If for any reason the Principal Balance or any portion thereof is paid prior to the **One Hundred Eighty (180) days following the Interest Commencement Date as set forth above in Paragraph 2 (b)**, whether voluntarily, involuntarily, by operation of law, acceleration, including acceleration on account of an Event of Default and/or a violation of Paragraph 4.2 of the Deed of Trust, or otherwise, Maker shall pay to Holder, together with the amount being prepaid and any unpaid accrued interest, a prepayment charge (the "Prepayment Premium") equal to **$0.00**. [[Thereafter, Maker may prepay all or any portion of the Principal Balance without payment of any Prepayment Premium.]]

(b) Maker shall have the right voluntarily to prepay all or any portion of the Principal Balance, together

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 7 of 44

with accrued interest thereon, but only if Maker gives Holder not less than thirty (30) days' prior written notice of its intention to prepay, and delivers to Holder, on or before the date of prepayment, the Prepayment Premium as calculated above (if any), together with the amount being prepaid and all accrued interest and other sums due under the Loan Documents.

(c) Maker acknowledges that (i) the Prepayment Premium represents the reasonable estimate of Holder and Maker of a fair average compensation for the loss that may be sustained by Holder due to the payment of any of the Principal Balance prior to the Maturity Date; and (ii) the Prepayment Premium shall be paid without prejudice to the right of Holder to collect any other amounts provided to be paid hereunder or under the other Loan Documents.

(d) Maker hereby expressly waives any right it may have under California Civil Code Section 2954.10 to prepay this Note, in whole or in part, without payment of the Prepayment Premium, upon acceleration of the Maturity Date of this Note, and agrees that if for any reason, a prepayment of any or all of this Note is made, whether voluntarily, involuntarily or upon or following any acceleration of the Maturity Date of this Note by Holder, then Maker shall pay the Prepayment Premium calculated pursuant to Paragraph 22(a) above. By initialing this provision in the space provided below, Maker hereby declares that Holder's agreement to make the Loan at the Interest Rate and for the term set forth in this Note constitutes adequate consideration, given individual weight by Maker, for this waiver and agreement.

INITIALS OF MAKER: _K_

IN WITNESS WHEREOF, Maker has caused this Note to be executed and delivered effective as of the date first written above.

MAKER:

_____
LILIA CHAVEZ

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 8 of 44

# Exhibit "X"

## PAYOFF APPROVAL & ACKNOWLEDGEMENT

Account Number: _____

Borrower/Buyer: _____

Note Holder/Lender: _____

Total Payoff Amount: _____

Payoff Effective Date: _____

In exchange for this payoff information, and as required by the terms of the Promissory Note Secured By Deed Of Trust (hereinafter the "Note"), the Borrower/Buyer warrants to Automatic Funds Transfer Services and all those with an interest in this debt, including the stated Note Holder/Lender and Automatic Funds Transfer Services (hereinafter collectively, "AFTS"), that (i) no representations have been made to the Borrower/Buyer other than as set forth or which may arise out of the Note; (ii) the Borrower/Buyer has fully reviewed and hereby approves of the Account payment history, accounting, and all calculations used to determine the Total Payoff Amount as forth above; (iii) AFTS is fully released from any and all claims, known or unknown, of any kind arising out of or related to the Note, the debt, the security, payoff amounts, and calculations of all sums charged, (iv) the Borrower/Buyer has no rights, offsets, or claims, threatened or pending against AFTS, and (v) that the making and acceptance of the Total Payoff Amount shall constitute a full and final settlement, waiver and release of any and all claims, known or unknown, by the Borrower/Buyer against AFTS and by AFTS against the Borrower/Buyer.

Should the Note be secured by real property in California, the Borrower/Buyer and AFTS, waive any and all rights under section 1542 of the Civil Code of California, which states: **"A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor."**

Should this document be signed by someone other than the Borrower/Buyer, then the undersigned represents and warrants it/they has/have full power and actual authority to approve and accept the Total Payoff Amount and execute this document on behalf of the Borrower, and to carry out all actions required by this document. All persons executing this Agreement, who are not the Borrower, represent and warrant that it/they has/have full power and authority to bind the Borrower, its corporations, partnerships and/or marital communities.

_____
Signature

Date: 2/20/15

_____
Print Name: Lilia Chavez

Phone Number: (408) 561-9600

_____
Print Title/Relationship if acting as the authorized agent on behalf of Borrower
Owner

_____
AFTS By:

_____
Date

# EXHIBIT B

Stanislaus, County Recorder
Lee Lundrigan Co Recorder Office
DOC- 2015-0014248-00
Acct 505-North American Title Ins Co
Friday, FEB 27, 2015 08:00:00
Ttl Pd   $131.00     Rcpt # 0003628642
                                      OLD/R3/4-22

RECORDATION REQUESTED BY
AND WHEN RECORDED MAIL TO:

Alviso Funding
13131 Dierix Drive
Mountain View, CA 94040

APN: 030-015-029
      037-032-016
      101-006-081
      037-004-025

---

SPACE ABOVE THIS LINE FOR RECORDER'S USE

DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE
FILING WITH ASSIGNMENT OF RENTS AND PROCEEDS

THIS DEED OF TRUST, SECURITY AGREEMENT AND FIXTURE FILING WITH ASSIGNMENT OF RENTS AND PROCEEDS (this "Deed of Trust") dated as of FEBRUARY 17, 2015, is made by LILIA CHAVEZ, A MARRIED WOMAN AS HER SOLE AND SEPARATE PROPERTY (the initial Trustor), to MORTGAGE LENDER SERVICES INC., A CALIFORNIA CORPORATION, having offices at FOLSOM, CA (the initial Trustee), for the benefit of ALVISO FUNDING, located at 13131 Dierix Drive, Mountain View, CA 94040 (the initial "Beneficiary").

WITNESSETH:

TRUSTOR HEREBY IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE, IN TRUST, WITH POWER OF SALE all of Trustor's right, title and interest now owned or hereafter acquired in and to the following property, together with the Personalty (as hereinafter defined):

A.   That certain real property, and all appurtenances, easements, rights and privileges thereto, including all minerals, oil, gas and other hydrocarbon substances thereon or therein, air rights, water rights and development rights, and any land lying in the streets, roads or avenues adjoining the real property or any part thereof (collectively, the "Land") located in the County of Stanislaus, State of California, and more particularly described in Exhibit A hereto;

B.   All Improvements (as hereinafter defined);

C.   All Fixtures (as hereinafter defined), whether now or hereafter installed, being hereby declared to be for all purposes of this Deed of Trust a part of the Land; and

D.   All Rents and Proceeds (as hereinafter defined).

FOR THE PURPOSE OF SECURING, in such order of priority as Beneficiary may determine: (i) payment of the Indebtedness (as hereinafter defined); and (ii) payment (with interest as provided) and performance by Trustor of the other Obligations (as hereinafter defined).

ARTICLE 1
DEFINITIONS

Certain Defined Terms:  As used in this Deed of Trust, the following terms shall have the following meanings. Terms defined in the other Loan Documents (as defined below) shall have the same meaning when used herein.

Agreements:  As defined in Paragraph 8.2 hereof.

1

Chavez – DOT, Modesto, CA

<u>Beneficiary</u>: The initial Beneficiary, **ALVISO FUNDING**, and any future owner or holder, including pledgees and participants of the Note, or any other instrument secured by this Deed of Trust, or any participation therein.

<u>Collateral</u>: The Personalty and the Fixtures.

<u>Default Rate</u>: As defined in the Note.

<u>Environmental Law</u>: Any present and future Federal, state and local laws, statutes, ordinances, rules, regulations, standards, policies and other government directives or requirements, as well as common law, that apply to Trustor or the Property and relate to Hazardous Materials, including the Comprehensive Environmental Response, Compensation and Liability Act, the Resource Conservation and Recovery Act, and Sections 25115, 25117, 25122.7, 25140, 25249.8, 25281, 25316, 25501, and 25316 of the California Health and Safety Code; and Article 9 or Article 11 of Title 22 of the Administrative Code, Division 4, Chapter 20.

<u>Event of Default</u>: As defined in Paragraph 6.1 hereof.

<u>Fixtures</u>: Trustor's right, title and interest in all fixtures located upon or within the Improvements or now or hereafter installed in, or used in connection with any of the Improvements, whether or not permanently affixed to the Land or the Improvements.

<u>Flood Acts</u>: The National Flood Insurance Act of 1968, the Flood Disaster Protection Act of 1973, or the National Flood Insurance Reform Act of 1994, as each have been or may be amended, or any successor Law.

<u>Hazardous Materials</u>: Any petroleum and petroleum products and compounds containing them, including gasoline, diesel fuel and oil; explosives, flammable materials; radioactive materials; polychlorinated biphenyls ("PCBs") and compounds containing them; lead and lead-based paint; Microbial Matter, infectious substances, asbestos or asbestos-containing materials in any form; underground or above-ground storage tanks, whether empty or containing any substance; any substance the presence of which on the Property is prohibited by any federal, state or local authority; any substance that requires special handling; and any other material or substance now or in the future defined as a "hazardous substance," "hazardous material", "hazardous waste", "toxic substance", "toxic pollutant", "contaminant", or "pollutant" within the meaning of any Environmental Law.

<u>Impositions</u>: All real estate and personal property and other taxes and assessments, water and sewer rates and charges levied or assessed upon or with respect to the Property, all dues, assessments and other charges levied or assessed by any homeowner or property owner association, common interest or planned unit association, or other association applicable to the Property, and any and all other charges, expenses, payments, claims, mechanics' or material suppliers' liens or assessments of any nature that at any time prior to or after the execution of the Loan Documents may be assessed, levied, imposed, or become a lien upon the Property or the rent or income received therefrom, or any use or occupancy thereof.

<u>Impound Account</u>: The account that Trustor shall maintain when required pursuant to Paragraph 3.4 hereof.

<u>Improvements</u>: Trustor's right, title and interest in all buildings and other improvements located on the Land, or at any time hereafter constructed or placed upon the Land, and all additions to, modifications of and replacements thereof.

<u>Indebtedness</u>: The indebtedness evidenced by the Note (including any prepayment charges due thereunder) and all other amounts due from Trustor to Beneficiary evidenced or secured by the Loan Documents, plus interest on all such amounts as provided in the Loan Documents.

<u>Land</u>: As defined in the above Granting Paragraph A of this Deed of Trust.

<u>Laws and Restrictions</u>: All laws, regulations, orders, codes, ordinances, rules, statutes and policies, restrictive covenants and other title encumbrances, permits and approvals, and Leases, applicable to the development, occupancy, ownership, management, use, and/or operation of the Property or otherwise affecting the Property or Trustor.

<u>Leases</u>: Any and all leasehold interests, and other rental agreements, licenses and concessions, now or hereafter affecting or covering any part of the Property.

<u>Loan</u>: The loan from Beneficiary to Trustor evidenced by the Note.

2

Chavez – DOT, Modesto, CA

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 12 of 44

Loan Documents: The Note, this Deed of Trust, and all other documents, evidencing, securing or relating to the Loan, the payment of the Indebtedness or the performance of the Obligations.

Loan Parties: Any Trustor, any general partner, member, trustee or holder of a beneficial interest of Trustor or any Person constituting one of a Trustor that consists of multiple Persons, and/or any guarantor of any of Trustor's obligations under any of the Loan Documents.

Material Adverse Change: Any material and adverse change in (i) the financial condition of any of the Loan Parties, or (ii) the condition, management or operation of the Property.

Net Proceeds: As defined in Paragraph 5.1B hereof.

Note: The Promissory Note of even date herewith executed by Trustor in the original principal amount of THREE HUNDRED TWENTY-FIVE THOUSAND AND 00/100ths DOLLARS ($325,000.00), payable to Beneficiary or its order, and all modifications, renewals or extensions thereof.

Obligations: Any and all of the terms, covenants, promises and other obligations (including payment of the Indebtedness) made or owing by Trustor to or due to Beneficiary as provided in the Loan Documents and all of the material covenants, promises and other obligations made or owing by Trustor to any Person (other than Beneficiary) relating to the Property.

Permitted Exceptions: All of those title exceptions set forth in the title insurance policy issued to Beneficiary in connection with the Loan, which insures the priority of this Deed of Trust.

Person: Any natural person, corporation, firm, association, government, governmental agency or any other entity, whether acting in an individual, fiduciary or other capacity.

Potential Event of Default: Any event which, with the passage of time, with the giving of notice, or both, would constitute an Event of Default.

Personalty: Trustor's right, title and interest in all personal property (other than Fixtures) now or hereafter located in, upon or about or collected or used in connection with the Property, together with all present and future attachments, accessions, replacements, substitutions and additions thereto or therefor, and the cash and noncash proceeds thereof, including all goods, equipment, furniture, fixtures and furnishings (such as appliances, satellite television equipment, light fixtures, drapes and window coverings, floor coverings, laundry equipment, and office equipment), inventory, the Impound Account, the Agreements, all Trademarks, service marks, designs, logos, names or similar identifications pertaining to the Property, all drawings, plans and specifications, and all accounts, contract rights and general intangibles (such as insurance proceeds and condemnation awards or compensation, and any rights to Trademarks) arising out of or incident to the ownership, development or operation of the Property owned by or in which Trustor has an interest.

Prepayment Premium: The additional amount (if any) payable on account of a prepayment, as specified in the Note.

Principal Party(ies): As defined in Paragraph 6.1B hereof.

Proceeding: As defined in Paragraph 6.1B hereof.

Property: All or any portion of, or interest in, each of the Land, Improvements, Fixtures, Personalty and Rents and Proceeds of Trustor as defined in the Granting paragraph of this Deed of Trust.

Receiver: Any trustee, receiver, custodian, fiscal agent, liquidator or similar officer.

Rents and Proceeds: All rents, royalties, revenues, receipts, issues, profits, security deposits, termination payments, proceeds and other income of any kind or character from the Leases, the Land, the Improvements, the Fixtures and Transfers.

Trademarks: All trademarks, service marks, designs, logos, indicia, tradenames, corporate names, company names, business names, fictitious business names, trade styles owned by Trustor and used in connection with the Property and/or other source and/or identifiers and applications pertaining thereto; provided that the rights and interests described in this Section shall include, without limitation, in favor of Trustor pertaining to trademarks or registrations presently or in the future owned or used by third parties but only to the extent permitted by such licensing or other contracts and, if not so permitted, only with the consent of such third parties.

3

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 13 of 44

<u>Transfer</u>: Any of the following:

(i) a sale, conveyance, assignment, transfer, alienation, or other disposition of the Property, of any kind (other than Leases), or any other transaction the result of which is, directly or indirectly, to divest Trustor of any portion of or interest in its title to the Property, voluntarily or involuntarily;

(ii) a mortgage, conveyance of security title, or encumbrance of the Property, or any interest therein in any manner (whether direct or indirect, voluntary or involuntary, but excluding the imposition of mechanics' or materialman's liens);

(iii) a merger, consolidation or dissolution involving, or the sale, transfer or assignment of all or substantially all of, the assets of Trustor, or any general partner or member of Trustor;

(iv) an assignment, transfer, pledge, voluntary or involuntary sale, or encumbrance (at one time or over any period of time) of ten percent (10%) or more of (A) the beneficial interest in Trustor, (B) the voting stock or beneficial interest of any corporation or limited liability company which is a general partner or member of Trustor, or any corporation or limited liability company directly or indirectly owning ten percent (10%) or more of any such corporation or limited liability company, or (C) the ownership interest of any owner of ten percent (10%) or more of the beneficial interests of Trustor if Trustor is a trust;

(v) a transfer of any general partnership, managing member or controlling interest in Trustor, in an entity which is in Trustor's chain of ownership and which is derivatively liable for the obligations of Trustor, or in any entity that has the right to participate directly or indirectly in the control of the management or operations of Trustor;

(vi) a conversion of any such general partnership interest to a limited partnership interest;

(vii) a change, removal, or resignation of any general partner of Trustor if Trustor is a partnership; or

(viii) a change, removal, or resignation of any managing member (or if no managing member, any member) of Trustor if Trustor is a limited liability company.

<u>Trustee</u>: The initial Trustee, **MORTGAGE LENDER SERVICES INC., A CALIFORNIA CORPORATION**, and its successors and assigns.

<u>Trustor</u>: The initial Trustor, ALVISO FUNDING, and its successors and assigns (whether or not any such successor or assign assumes the Obligations hereunder). Reference to "Trustor" includes each and every Trustor, both individually and collectively, when more than one Trustor exists.

ARTICLE 2
REPRESENTATIONS AND WARRANTIES

Trustor hereby represents and warrants to Beneficiary and Trustee that as of the date of this Deed of Trust and as of the date of any subsequent disbursement pursuant to the Loan Documents:

2.1   <u>Title, Authorization and Organization</u>.   Trustor (i) is the lawful owner of the Property and holds good and marketable title to the Property free and clear of all defects, liens, encumbrances, easements, exceptions and assessments, except the Permitted Exceptions; (ii) has the power and authority to grant the Property as provided in and by this Deed of Trust and to own and operate the Property; (iii) forever warrants and defends Trustor's title to the Property and the validity, enforceability, and priority of the lien and security interest created by this Deed of Trust against the claims of all Persons; (iv) is duly organized, validly existing and in good standing under the laws of the State of its organization and is duly qualified to do business in the State in which the Land is located; and (v) is in compliance with all Laws and Restrictions.

2.2   <u>Validity of Loan Documents</u>.   The execution, delivery and performance by Trustor of the Loan Documents and the borrowings evidenced by the Note (i) are within the power of Trustor, (ii) have been authorized by all requisite action, (iii) have received all necessary approvals and consents from any Person from whom such approval or consent is required; (iv) will not violate any Laws and Restrictions or any agreement or other instrument;. (v) will not result in the creation or imposition of any lien, charge, or encumbrance upon the Property or assets except for those in this Deed of Trust; and (vi) will not require any authorization or license from, or any filing with, any governmental or other body (except for the recordation or filing of any Loan Document). The Loan Documents constitute legal, valid and binding obligations of Trustor.

4

Chavez – DOT, Modesto, CA

Case: 17-51958   Doc# 28-2   Filed: 09/26/17   Entered: 09/26/17 16:23:25   Page 14 of 44

2.3  Financial Statements and Other Information.  All financial statements and other reports, papers, data and information given to Beneficiary with respect to the Property or any Loan Party are true, accurate, complete and correct and except as expressly noted to the contrary therein, have been prepared in accordance with generally accepted accounting principles consistently applied throughout the periods covered thereby.  There has been no Material Adverse Change since the date of the most recent financial statement given to Beneficiary.

2.4  Litigation.  There is not now pending against or affecting any Loan Party or the Property, nor to the best of Trustor's knowledge is there threatened, any action, suit or proceeding that might result in a Material Adverse Change.

2.5  Additional Representations and Warranties.  (i) The Property is not used principally or primarily for agricultural or grazing purposes; (ii) all costs for labor and materials for the construction of the Improvements have been paid in full; (iii) Trustor is not aware of any assessment for public improvements which is pending and which could become a lien upon the Property; (iv) no Potential Event of Default has occurred under any of the Loan Documents; (v) Trustor is not in default under any agreement or instrument to which it is a party which default would have a material and adverse effect on the Property or Trustor's ability timely to perform the Obligations; (vi) neither the Property, nor any part thereof, has sustained, incurred or suffered any material damage or destruction; and (vii) subject to the Permitted Exceptions, the Land, Improvements, Personalty and Fixtures are owned by Trustor free and clear of any liens, encumbrances, mortgages, security interests, claims and rights of others; (viii) the Property and the current use thereof complies with all Laws and Restrictions; (ix) Trustor has received no notices of violations or breaches of any Laws and Restrictions; (x) Trustor has not received any notice of any violation with respect to, and to Trustor's knowledge the Improvements are in material compliance with, The Americans With Disabilities Act of 1990 (42 U.S.C. §§12101-12213), including Title III thereof; and (xi) Trustor has not received any notice of any violation with respect to, and to Trustor's knowledge the Improvements are in material compliance with, the Fair Housing Amendments Act of 1988 (42 U.S.C. §3610 et seq.), as amended, and the rules and regulations implementing such legislation.

2.6  Bankruptcy.  No petition in bankruptcy, petition or answer seeking assignment for the benefit of creditors or appointment of a Receiver or similar proceeding with respect to any Principal Party has occurred or is contemplated.

2.7  Zoning, Building, Environmental and Land Use Law Compliance.  The Property and all uses thereof comply with all applicable zoning, building, environmental and other land use laws, ordinances, rules and regulations, and other similar restrictions (including the Americans with Disabilities Act). No action or proceeding, administrative or otherwise, is pending or threatened before a court or administrative agency with respect to compliance by the Property with applicable zoning, building, environmental and land use laws, ordinances, rules and regulations and similar restrictions.

2.8  Property Separately Assessed.  The Land and Improvements are separately assessed and taxed in one or more separate assessor's tax parcels under applicable real property and personal tax laws.

2.9  Illegal Activity.  No portion of the Property has been or will be purchased, improved, fixtured, equipped or furnished with proceeds of any illegal activity and, to the best of Trustor's knowledge, there are no illegal activities at or on the Property.

2.10  Executive Order 13224.  Trustor and all Persons holding any legal or beneficial interest whatsoever in Trustor are not included in, owned by, controlled by, acting for or on behalf of, providing assistance, support, sponsorship, or services of any kind to, or otherwise associated with any of the persons or entities referred to or described in Executive Order 13224 – Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended.  It shall constitute an Event of Default hereunder if the foregoing representation and warranty shall ever become false.

ARTICLE 3
AFFIRMATIVE COVENANTS

Trustor hereby covenants and agrees as follows:

3.1  Obligations of Trustor.  Trustor will timely perform, or cause to be timely performed, all the Obligations.

3.2  Insurance.

A.  Property and Time Element Insurance.  Trustor shall keep the Property insured for the benefit of Trustor and Beneficiary (with Beneficiary named as mortgagee) by (i) a "Special Form" ("All Risk") property insurance policy with an agreed amount endorsement for full replacement cost (as defined below) without any coinsurance provisions or penalties, or the equivalent form of coverage available if "Special Form" ("All Risk") property insurance is no longer available in the

5

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 15 of 44

ordinary course in the insurance industry, in an amount sufficient to prevent Beneficiary from ever becoming a coinsurer under the policy or Laws and Restrictions, and with a deductible not to exceed Twenty-Five Thousand Dollars ($25,000.00); (ii) a policy or endorsement providing business income insurance (including business interruption insurance, extra expense insurance and rent insurance) on an actual loss sustained basis in an amount equal to at least one (1) year's total income from the Property including all rents plus all other pro forma annual income such as percentage rent and tenant reimbursements of fixed and operating expenses; (iii) a policy or endorsement insuring against damage by flood if the Property is located in a Special Flood Hazard Area identified by the Federal Emergency Management Agency or any successor or related government agency as a 100 year flood plain currently classified as Flood Insurance Rate Map Zones "A", "AO", "AH", "A1-A30", "AE", "A99", "V", "V1-V30", and "VE", under which flood insurance has been made available under the Flood Acts, in an amount equal to the lesser of (A) the original amount of the Note or (B) the maximum limit of coverage available for the Property under the Flood Acts; (iv) a policy or endorsement covering against damage or loss from (A) sprinkler system leakage and (B) boilers, boiler tanks, HVAC systems, heating and air-conditioning equipment, pressure vessels, auxiliary piping, and similar apparatus, in the amount reasonably required by Beneficiary; (v) during the period of any construction, repair, restoration, or replacement of the Property, a standard builder's risk policy with extended coverage in an amount at least equal to the full replacement cost of such Property, and worker's compensation, in statutory amounts; and (vi) a policy or endorsement covering against damage or loss by earthquake and other natural phenomenon in the amounts reasonably required by Beneficiary. As used herein, "full replacement cost" means the one hundred percent (100%) replacement cost of the Improvements, without allowance for depreciation and exclusive of the cost of excavations, foundations, footings, and value of land, and shall be subject to verification by Beneficiary. Full replacement cost will be determined, at Trustor's expense, periodically (but at least once per year) by the insurance company or an appraiser, engineer, architect, or contractor approved by said company and Beneficiary.

B.  Liability and Other Insurance. Trustor shall maintain commercial general liability insurance with per occurrence limits of $1,000,000, a products/completed operations limit of $2,000,000, and a general aggregate limit of $2,000,000, with an excess/umbrella liability policy of not less than $10,000,000 per occurrence and annual aggregate covering Trustor, with Beneficiary named as an additional insured, against claims for bodily injury or death or property damage occurring in, upon, or about the Property or any street, drive, sidewalk, curb, or passageway adjacent thereto. The insurance policies shall also include operations and blanket contractual liability coverage which insures contractual liability under the indemnifications set forth in Paragraph 9.18 below (but such coverage or the amount thereof shall in no way limit such indemnifications). Upon request, Trustor shall also carry additional insurance or additional amounts of insurance covering Trustor or the Property as Beneficiary shall reasonably require.

C.  Form of Policy. All insurance required under this Paragraph shall be fully paid for, non-assessable, and the policies shall contain such provisions, endorsements, and expiration dates as Beneficiary shall reasonably require. The policies shall be issued by insurance companies authorized to do business in the state in which the Property is located, approved by Beneficiary, and must have and maintain a current financial strength rating of "A-, X" (or higher) from A.M. Best or equivalent (or if a rating by A.M. Best is no longer available, a similar rating from a similar or successor service). In addition, all policies shall (i) contain a Standard Lender's Loss Payable endorsement and other non-contributory standard mortgagee protection clauses acceptable to Beneficiary, (ii) provide that they shall not be canceled, amended, or materially altered (including reduction in the scope or limits of coverage) without at least thirty (30) days' prior written notice to Beneficiary except in the event of cancellation for non-payment of premium, in which case only ten (10) days' prior written notice will be given to Beneficiary, and (iii) include a waiver of subrogation clause substantially equivalent to the following: "The Company may require from the Insured an assignment of all rights of recovery against any party for loss to the extent that payment therefor is made by the Company, but the Company shall not acquire any rights of recovery which the Insured has expressly waived prior to loss, nor shall such waiver affect the Insured's rights under this policy."

D.  Original Policies. Trustor shall deliver to Beneficiary (i) original or certified copies of all policies (and renewals) required under this Paragraph and (ii) receipts evidencing payment of all premiums on such policies at least thirty (30) days prior to their expiration. If original and renewal policies are unavailable or if coverage is under a blanket policy, Trustor shall deliver duplicate originals, or, if unavailable, original certificates evidencing that such policies are in full force and effect together with certified copies of the original policies.

E.  General Provisions. Trustor shall not carry separate or additional insurance concurrent in form or contributing in the event of loss with that required under this Paragraph unless endorsed in favor of Beneficiary provided in this Paragraph and approved by Beneficiary in all respects. In the event of foreclosure of this Deed of Trust or other transfer of title or assignment of the Property in extinguishment, in whole or in part, of the Obligations, all right, title, and interest of Trustor in and to all policies of insurance then in force regarding the Property and all proceeds payable thereunder and unearned premiums thereon shall immediately vest in the purchaser or other transferee of the Property. No approval by Beneficiary of any insurer shall be construed to be a representation, certification, or warranty of its solvency. No approval by

6

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 16 of 44

Beneficiary as to the amount, type, or form of any insurance shall be construed to be a representation, certification, or warranty of its sufficiency. Trustor shall comply with all insurance requirements and shall not cause or permit any condition to exist which would be prohibited by any insurance requirement or would invalidate the insurance coverage on the Property.

F.     Waiver of Subrogation.  Trustor for itself, and on behalf of its insurers, hereby waives and releases any and all right to claim or recover against Beneficiary, its officers, employees, agents and representatives, for any loss of or damage to Trustor, other Persons, the Property, Trustor's property or the property of other Persons from any cause whether or not insured against by the provisions of this Deed of Trust or otherwise insured against by Trustor.

3.3  Maintenance, Waste and Repair.  Trustor will (i) maintain the Property in good order and condition; (ii) promptly make, or cause to be made, all necessary structural and non-structural repairs to the Property; (iii) not diminish or materially alter the Improvements, or erect any new buildings, structures or building additions on the Land, without the prior written consent of Beneficiary; (iv) not remove or permit to be removed any of the Fixtures or Personalty from the Property without the prior written consent of Beneficiary unless replaced by articles of equal suitability and value owned by Trustor free and clear of any lien or security interest; and (v) not permit any waste of the Property or make any change in the use thereof, nor do or permit to be done thereon anything, that may in any way impair the security of this Deed of Trust.

3.4  Impositions; Impounds.  Trustor will pay all Impositions when due.  Trustor will deliver to Beneficiary, within seven (7) days after demand therefor, receipts showing the payment of any Impositions.  Following an Event of Default, Trustor will pay monthly to Beneficiary an amount equal to one-twelfth (1/12th) of the annual cost of Impositions together with an amount equal to the estimated next premiums for hazard and other required insurance.  These funds will be held by Beneficiary without interest and will be released to Trustor for payment of Impositions and insurance premiums, or directly applied to such costs by Beneficiary, as Beneficiary may elect.

3.5  Compliance with Law.  Trustor will promptly and faithfully comply with and perform all present and future Laws and Restrictions.

3.6  Books and Records and Other Information.

A.  Trustor, without expense to Beneficiary, will maintain full and complete books of account and records reflecting the results of the operations of the Property in accordance with generally accepted accounting principles, and will furnish or cause to be furnished to Beneficiary such information concerning the financial condition of Trustor and the Property as Beneficiary shall reasonably request, including the most recent rent roll for the Property, any appraisals of the Property performed during the previous year, a budget for the current year, tenant sales and percentage rent for the Property, annual audited financial statements of Trustor, and an annual audited operating statement for the Property and annual audited financial statements for the other Principal Parties (if any).  All financial statements and operating statements under this Paragraph 3.6A shall be certified as true, correct and accurate by an authorized representative of Trustor.  Upon Beneficiary's reasonable request, Beneficiary shall have the right, at all reasonable times and upon reasonable notice, to audit the books and records of Trustor.  If such audit discloses a variance of three percent (3%) or more in income or expenses entered in such books and records, the cost of such audit shall be paid by Trustor.

B.  Trustor shall keep at either its principal place of business or at the offices at the Improvements, and make available to Beneficiary during normal business hours upon Beneficiary's request (or if so requested by Beneficiary, promptly provide to Beneficiary copies thereof), as-built plans and specifications or, if unavailable, the final set of plans and specifications from which the Improvements were constructed ("As-Builts"), certified by a licensed architect or licensed contractor as true, correct and complete As-Builts.

C.  Upon the occurrence of any Event of Default, each Trustor shall immediately deliver to Beneficiary, or a Person designated by Beneficiary, copies of all books and records and a current rent roll, and the As-Builts, all certified, warranted and represented by Trustor as being true, correct, accurate, and complete, by an authorized by an authorized representative of Trustor.

3.7  Further Assurances.  Trustor, at any time upon the reasonable request of Beneficiary, will at Trustor's expense, execute, acknowledge and deliver all such additional papers and instruments (including a declaration of no setoff) and perform all such further acts as may be reasonably necessary to perform the Obligations and, as Beneficiary deems necessary, to preserve the priority of the lien of this Deed of Trust and to carry out the purposes of the Loan Documents.

7

Case: 17-51958     Doc# 28-2     Filed: 09/26/17     Entered: 09/26/17 16:23:25     Page 17 of 44

3.8  Litigation. Trustor will promptly give notice in writing to Beneficiary of any litigation or other event or occurrence which might result in a Material Adverse Change.

3.9  Inspection of Property. Trustor hereby grants to Beneficiary, its agents, employees, consultants and contractors, the right to enter upon the Property for the purpose of making any and all inspections, reports, tests, inquiries and reviews as Beneficiary (in its sole and absolute discretion) deems necessary to assess the then current condition of the Property, or for the purpose of performing any of the other acts Beneficiary is authorized to perform hereunder or under the Loan Documents. Trustor shall cooperate with Beneficiary to facilitate such entry and the accomplishment of such purposes. All costs, fees and expenses (including those of Beneficiary's legal counsel and consultants) incurred by Beneficiary with respect to such inspections, reports, tests, inquiries and reviews shall be paid by Trustor to Beneficiary upon demand, shall accrue interest at the Default Rate until paid, and shall be secured by this Deed of Trust.

3.10  Contest. Notwithstanding the provisions of Paragraphs 3.4 and 3.5, Trustor may, at its expense, upon written notice to Beneficiary, contest the validity or application of any Impositions or Laws and Restrictions by appropriate legal proceedings promptly initiated and diligently conducted in good faith, provided that (i) Beneficiary is reasonably satisfied that the priority of this Deed of Trust shall be maintained and neither the Property nor any part thereof or interest therein will be in danger of being sold, forfeited, or lost as a result of such contest, and (ii) Trustor shall have posted a bond or furnished such other security as may be reasonably required from time to time by Beneficiary.

3.11  Additional Information. Trustor will furnish to Beneficiary, within seven (7) days after written request therefor, any and all information that Beneficiary may reasonably request concerning the Property or the performance by Trustor of the Obligations.

3.12  Prepayment. Trustor may prepay the Loan only on the terms and conditions set forth in the Note and Trustor shall pay Beneficiary prepayment charges in respect of any prepayment, whether voluntary or involuntary, as required by and on the terms and conditions set forth in the Note.

3.13  Tax Service Contract. So long as any Loan Document remains in effect, at Trustor's sole expense, Beneficiary shall be furnished tax service contracts issued by a tax reporting agency satisfactory to Beneficiary.

3.14  Broker and Finder Fees. Trustor shall pay any and all commissions and fees of any kind or character due any Person on account of the Loan transaction, and shall indemnify, defend, protect and hold Beneficiary and Trustee harmless from and against any and all losses, liabilities, claims, damages, causes of action, costs and expenses (including reasonable attorneys' fees) arising out of or in connection with any such commissions or fees, or claims of any Person with respect thereto.

ARTICLE 4
NEGATIVE COVENANTS

Trustor hereby covenants to and agrees as follows:

4.1  Restrictive Uses. Trustor will not initiate, join in, or consent to any change in the current use of the Property or in any zoning ordinance, private restrictive covenant, assessment proceedings or other public or private restriction limiting or restricting the uses that may be made of the Property or any part thereof or in any way change the boundaries of the Property without the prior written consent of Beneficiary.

4.2  Prohibited Transfers. Trustor shall not participate in, and shall not cause, allow or otherwise permit, a Transfer without the prior written consent of Beneficiary, which consent may be given or withheld for any reason (or for no reason) or given conditionally (including a requirement that the permitted transferee assume in writing, in form and substance satisfactory to Beneficiary in its sole discretion, all of Trustor's Obligations under the Loan Documents and agree to be bound thereby), as determined by Beneficiary in its sole and absolute discretion, and any default under, failure to observe, or breach of the provisions of this Paragraph 4.2 shall constitute an immediate Event of Default hereunder and, at the option of Beneficiary, Beneficiary may accelerate the Indebtedness whereby the entire Indebtedness (including any Prepayment Premium) shall become immediately due and payable. Any assumption of Trustor's obligations hereunder shall not, however, release any Loan Party from any liability under the Loan Documents. Consent to any such Transfer by Beneficiary shall not be deemed a waiver of Beneficiary's right to require such consent to any further or future Transfers.

4.3  No Cooperative or Condominium. Trustor shall not operate the Property or permit the Property to be operated as a cooperative or condominium or otherwise such that the tenants or occupants participate in ownership, control, or management of the Property.

8

Chavez – DOT, Modesto, CA

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 18 of 44

4.4 <u>Ownership Documents</u>. If Trustor is a corporation (other than a corporation the stock of which is listed and publicly traded on a national or regional stock exchange), Trustor shall not materially amend its Articles or Bylaws without Beneficiary's prior written consent. If Trustor is a partnership or a limited liability company, Trustor will not terminate, permit the termination of or substantially amend its Partnership Agreement or Operating Agreement without Beneficiary's prior written consent. If Trustor is a trust or other form of legal entity, Trustor will not terminate, permit the termination of, or substantially amend its trust or other governing agreement without Beneficiary's prior written consent.

4.5 <u>Compliance With Anti-Terrorism Regulations</u>. Neither Trustor nor any Person holding any legal or beneficial interest whatsoever in Trustor shall at any time during the term of the Loan be described in, covered by or specially designated pursuant to or be affiliated with any Person described in, covered by or specially designated pursuant to Executive Order 13224 – Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism, as amended, or any similar list issued by OFAC or any other department or agency of the United States of America. Notwithstanding the foregoing, Trustor hereby confirms that if it becomes aware or receives any notice of any violation of the foregoing covenant and agreement (an "OFAC Violation"), Trustor will immediately (i) give notice to Beneficiary of such OFAC Violation, and (ii) comply with all Laws and Restrictions applicable to such OFAC Violation, including Executive Order 13224; the International Emergency Economic Powers Act, 50 U.S.C. Sections 1701-06; the Iraqi Sanctions Act, Pub. L. 101-513, 104 Stat. 2047-55; the United Nations Participation Act, 22 U.S.C. Section 287c; the Antiterrorism and Effective Death Penalty Act, (enacting 8 U.S.C. Section 219, 18 U.S.C. Section 2332d, and 18 U.S.C. Section 2339b); the International Security and Development Cooperation Act, 22 U.S.C. Section 2349 aa-9; the Terrorism Sanctions Regulations, 31 C.F.R. Part 595; the Terrorism List Governments Sanctions Regulations, 31 C.F.R. Part 596; and the Foreign Terrorist Organizations Sanctions Regulations, 31 C.F.R. Part 597 (collectively, the "Anti-Terrorism Regulations"), and Trustor hereby authorizes and consents to Beneficiary's taking any and all reasonable steps Beneficiary deems necessary, in its sole discretion, to comply with all Laws and Restrictions applicable to any such OFAC Violation, including the requirements of the Anti-Terrorism Regulations. Notwithstanding anything to the contrary in this <u>Paragraph 4.5</u>, Trustor shall not be deemed to be in violation of the covenants and agreements set forth in the first sentence of this <u>Paragraph 4.5</u> if Trustor timely complies with all requirements imposed by the foregoing sentence and all requirements of the Anti-Terrorism Regulations and all other applicable Laws and Restrictions relating to such OFAC Violation.

4.5 <u>Leases</u>. Trustor shall not, without first obtaining Beneficiary's prior written consent, (1) amend or modify any Lease in a manner that would reduce the term of the Lease or materially increase any rights or materially decrease any obligations of the tenant under the Lease, materially increase any of obligations or materially decrease any rights of the landlord under the Lease, (2) extend or renew any Lease (except in accordance with mandatory actions by the landlord under the existing lease provisions, if any), (3) terminate or accept the surrender of any Lease, (4) enter into any new Lease, or (5) accept any (i) prepayment of rent more than one (1) month in advance, (ii) termination fee, or (iii) similar payment under any Lease.

ARTICLE 5
CASUALTIES AND CONDEMNATION

5.1 <u>Insurance and Condemnation Proceeds</u>.

A.      Trustor shall notify Beneficiary in writing immediately upon the occurrence of any loss or damage by fire or other casualty to any of the Property or upon obtaining knowledge of the commencement of any proceedings for condemnation of any of the Property. Beneficiary shall be entitled to (i) participate in any such condemnation proceedings and Trustor from time to time will deliver to Beneficiary all instruments reasonably necessary to permit such participation, and (ii) settle and adjust all insurance claims relative to any such damage or destruction, deducting from any insurance proceeds the amount of all expenses incurred by Beneficiary in connection with any such settlement or adjustment. Notwithstanding anything to the contrary contained in any insurance policies, all proceeds paid to Trustor under any insurance policies required to be maintained by Trustor pursuant to <u>Paragraph 3.2</u> or otherwise relating to the Property and any insurance proceeds received by Trustor under insurance policies maintained by tenants pursuant to a lease obligation shall immediately be delivered to Beneficiary. All condemnation proceeds from the Property are hereby assigned to and shall be paid to the Beneficiary and the cost of any legal representation of Beneficiary in any such condemnation proceedings shall be borne by Trustor.

B.      If Beneficiary elects to make insurance proceeds or condemnation awards available for repair or reconstruction, Beneficiary shall, through a disbursement procedure established by Beneficiary, make available to Trustor the net amount of all insurance proceeds or condemnation awards received by Beneficiary after deduction of Beneficiary's reasonable costs and expenses, if any, in collection of the same (the "Net Proceeds"). In the event Beneficiary elects not to make the Net Proceeds available for repair or reconstruction, Beneficiary, at its sole option, may apply the Net Proceeds in payment of the Indebtedness or in satisfaction of any other Obligation in such order as Beneficiary may determine.

9

Chavez – DOT, Modesto, CA

Case: 17-51958   Doc# 28-2   Filed: 09/26/17   Entered: 09/26/17 16:23:25   Page 19 of 44

C.       The Net Proceeds and any additional funds deposited by Trustor with Beneficiary, plus any loss of rental income insurance proceeds which have been deposited with Beneficiary or which the carrier has acknowledged to be payable, shall constitute additional security for the Loan. Trustor shall execute, deliver, file and/or record, at its own expense, such documents and instruments as Beneficiary requires to grant to Beneficiary a perfected, first priority security interest in the Net Proceeds and such additional funds.

D.       In the event of loss of or damage to any of the Improvements which is not covered by insurance or with respect to which no Net Proceeds are available to either Beneficiary or Trustor, Trustor shall promptly repair, restore or replace such Improvements (or cause such Improvements to be promptly repaired, restored or replaced) in accordance with plans and specifications reasonably approved by Beneficiary.

     5.2      Additional Provisions Relating to Condemnation.      Trustor, immediately upon obtaining knowledge of the commencement of any proceedings for the condemnation of the entire Property or any material part thereof, will notify Trustee and the Beneficiary of the pendency of such proceedings. Trustee and Beneficiary may participate in any such proceedings and Trustor from time to time will deliver to Beneficiary all instruments requested by Beneficiary to permit such participation. Beneficiary shall be under no obligation to question the amount of any such award or compensation and may accept the same in the amount in which the same shall be paid. In any such condemnation proceedings, Beneficiary may be represented by counsel selected by Beneficiary, the cost of such counsel to be borne by Trustor. The proceeds of any award or compensation so received shall, at the option of Beneficiary, either be applied to the prepayment of the Indebtedness or satisfaction of any Obligation, or be paid over to the Trustor for restoration of the Improvements in accordance with procedures and requirements established by Beneficiary. Trustor hereby unconditionally and irrevocably waives all rights of a property owner under Section 1265.225(a) of the California Code of Civil Procedure, or any successor statute providing for the allocation of condemnation proceeds between a property owner and a lien holder.

## ARTICLE 6
## EVENTS OF DEFAULT AND REMEDIES OF BENEFICIARY

6.1  Events of Default.

A. It shall constitute an Event of Default hereunder if any of the following events shall occur and Beneficiary, by written notice delivered to Trustor, declares an Event of Default: (i) Trustor shall fail to pay within five (5) days of the date when due any part of the Indebtedness; (ii) Trustor shall fail to timely observe, perform or discharge any Obligation, other than as described in Paragraphs 6.1A.(i), (iii), (iv), (v), (vi), (vii), or (viii), and any such failure shall remain unremedied for thirty (30) days or such lesser period as may be otherwise specified in the applicable Loan Document or agreement (the failure under this clause (ii) hereinafter referred to as the "Grace Period") after notice to Trustor of the occurrence of such failure; (iii) Trustor, as lessor or sublessor, as the case may be, shall assign the Rents and Proceeds without first obtaining the written consent of Beneficiary; (iv) default by Trustor after the expiration of all applicable grace or cure periods under any agreement to which Trustor is a party, other than the Loan Documents, which agreement relates to the borrowing of money by Trustor from any Person, and such default might give rise to a Material Adverse Change or adversely affect the security for the Loan; (v) any representation or warranty made by Trustor in, under or pursuant to the Loan Documents was false or misleading in any material respect as of the date on which such representation or warranty was made or deemed remade; (vi) any of the Loan Documents shall cease to be in full force and effect or be declared null and void, or shall cease to constitute valid and subsisting liens and/or valid and perfected security interests in and to the Property, Trustor shall contest or deny in writing that it has any further liability or obligation under any of the Loan Documents; (vii) the occurrence of a Material Adverse Change; or (viii) if Trustor or any guarantor of the Loan (or any portion thereof) is an individual, then the death or incapacity of such individual, and if Trust or any such guarantor is a corporation, partnership, limited liability company or other legal entity, the dissolution, liquidation, or cessation of business operations of such entity.

B. It shall constitute an Event of Default hereunder without the requirement of any notice by Beneficiary if any of the following events shall occur: (i) Trustor, any other Loan Party, any general partner or managing member of any Loan Party which is a partnership or a limited liability company, as the case may be, any parent company of any such general partner or managing member, any Person directly or indirectly owning 50% or more of the outstanding shares of any Loan Party which is a corporation and any parent company of such Person, any trustee or beneficiary with a beneficial interest of 50% or more in any Loan Party, any owner of the Property, or any guarantor of Trustor's obligations under the Loan Documents (each a "Principal Party," and collectively, the "Principal Parties") shall generally not pay its debts as they become due or shall admit in writing its inability to pay its debts, or shall have made a general assignment for the benefit of creditors; (ii) any Principal Party shall commence any case, proceeding or other action seeking reorganization, arrangement, adjustment, liquidation, dissolution or composition of it or its debts under any law relating to bankruptcy, insolvency, reorganization or relief of debtors, or seeking to have an order for relief entered against it as debtor, or seeking appointment of a receiver, trustee, custodian or other similar official for it or for all or any substantial part of its property (collectively, a

10

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 20 of 44

"Proceeding"); (iii) any Principal Party shall take any action to authorize any of the actions set forth above in clauses (i) or (ii); (iv) any Proceeding shall be commenced against any Principal Party, and such Proceeding (A) results in the entry of an order for relief against it which is not fully stayed within seven (7) business days after the entry thereof or (B) remains undismissed for a period of forty-five (45) days; (v) any Principal Party shall liquidate, dissolve or otherwise terminate their corporate, limited liability company, partnership or other entity organizational structure without the prior written consent of Beneficiary; (vi) failure to comply with the provisions of Paragraph 3.2D hereof on or before the date fifteen (15) days prior to the expiration date of any policy furnished pursuant to the terms of the Loan Documents, and/or the lapse or expiration of any insurance policy or policies required to be obtained or maintained under the terms of the Loan Documents; or (vii) failure to timely observe, perform or discharge any provision of Paragraph 4.2 hereof or the occurrence of a Transfer without Beneficiary's prior written consent.

6.2  Remedies.

A.  Upon the occurrence of any Event of Default, Beneficiary may at any time declare all of the Indebtedness to be due and payable and the same shall thereupon become immediately due and payable, together with all payments due in accordance with the terms of the Note, without any further presentment, demand, protest or notice of any kind. Beneficiary may, in its sole discretion, also do any of the following: (i) in person, by agent, or by a Receiver, without regard to the adequacy of security, the solvency of Trustor or the condition of the Property, without obligation so to do and without notice to or demand upon Trustor, enter upon and take possession of the Property, or any part thereof, in its own name or in the name of Trustee and do any acts which Beneficiary deems necessary to preserve the value or marketability of the Property; sue for or otherwise collect the Rents and Proceeds, and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees (including court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses), against the Obligations, all in such order as Beneficiary may determine; appear in and defend any action or proceeding purporting to affect, in any manner whatsoever, the Obligations, the security hereof or the rights or powers of Beneficiary or Trustee; pay, purchase or compromise any encumbrance, charge or lien that in the judgment of Beneficiary or Trustee is prior or superior hereto; and in exercising any such powers, pay necessary expenses, employ counsel and pay reasonable attorneys' fees (including court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses); (ii) as a matter of strict right and without notice to Trustor or anyone claiming under Trustor, and without regard to the then value of the Property, apply ex parte to any court having jurisdiction to appoint a Receiver to enter upon and take possession of the Property, and Trustor hereby waives notice of any application therefor, provided a hearing to confirm such appointment with notice to Trustor is set within the time required by law (any such Receiver shall have all the powers and duties of Receivers in like or similar cases and all the powers and duties of Beneficiary in case of entry as provided herein, and shall continue as such and exercise all such powers until the date of confirmation of sale, unless such Receivership is sooner terminated); (iii) commence an action to foreclose this Deed of Trust in any manner provided hereunder or by law; (iv) with respect to any Personalty, proceed as to both the real and personal property in accordance with Beneficiary's rights and remedies in respect of the Land, or to proceed to sell said Personalty separately and without regard to the Land in accordance with Beneficiary's rights and remedies as to personal property; and/or (v) deliver to Trustee a written declaration of default and demand for sale, and a written notice of default and election to cause the Property to be sold, which notice Trustee or Beneficiary shall cause to be duly filed for record.

B.  If Trustor shall at any time fail to perform or comply with any of the terms, covenants and conditions required on Trustor's part to be performed and complied with under any of the Loan Documents or any other agreement that, under the terms of this Deed of Trust, Trustor is required to perform, then Beneficiary may, in its sole discretion: (i) make any payments hereunder or thereunder payable by Trustor and take out, pay for and maintain any of the insurance policies provided for herein or therein; and/or (ii) after the expiration of any applicable grace period and subject to Trustor's right of contest of certain Obligations specifically granted hereby, perform any such other acts thereunder on the part of Trustor to be performed and enter upon the Land and Improvements for such purpose.

C.  Should Beneficiary elect to foreclose by exercise of the power of sale herein contained, Beneficiary shall notify Trustee and shall deposit with Trustee this Deed of Trust and the Note and such receipts and evidence of expenditures made and secured hereby as Trustee may require. Upon receipt of such notice from Beneficiary, Trustee shall cause to be recorded, published and delivered to Trustor such notice of default and notice of sale as then required by law and by this Deed of Trust. Trustee shall, without demand on Trustor, after lapse of such time as may then be required by law and after recordation of such notice of default and after notice of sale having been given as required by law, sell the Property at the time and place of sale fixed by it in said notice of sale, either as a whole, or in separate lots or parcels or items as Beneficiary shall determine, and in such order as Beneficiary may determine, at public auction to the highest bidder for cash in lawful money of the United States payable at the time of sale. Trustee shall deliver to such purchaser or purchasers thereof its good and sufficient deed or deeds conveying the property so sold, but without any covenant or warranty, express or implied. The recitals in such deed of any matters or facts shall be conclusive proof of the truthfulness thereof. Any

11

Chavez – DOT, Modesto, CA

Person, including Trustor, Trustee or Beneficiary, may purchase at such sale and Trustor hereby covenants to warrant and defend the title of such purchaser or purchasers. After deducting all costs, fees and expenses of Trustee and of this Trust, including costs of evidence of title in connection with sale, Trustee shall apply the proceeds of sale in the following priority, to payment of: (i) first, all sums expended under the terms hereof, not then repaid, with accrued interest at the Default Rate; (ii) second, all other sums then secured hereby; and (iii) the remainder, if any, to the Person or Persons legally entitled thereto. Beneficiary may, in its sole discretion, designate the order in which the Property shall be offered for sale or sold through a single sale or through two or more successive sales, or in any other manner Beneficiary deems to be in its best interest. If Beneficiary elects more than one sale or other disposition of the Property, Beneficiary may at its option cause the same to be conducted simultaneously or successively, on the same day or at such different days or times and in such order as Beneficiary may deem to be in its best interests, and no such sale shall terminate or otherwise affect the lien of this Deed of Trust on any part of the Property not then sold until all Indebtedness secured hereby has been fully paid. If Beneficiary elects to dispose of the Property through more than one sale, Trustor shall pay the costs and expenses of each such sale of its interest in the Property and of any proceedings where the same may be made. Trustee may postpone the sale of all or any part of the Property by public announcement at such time and place of sale, and from time to time thereafter may postpone such sale by public announcement at the time fixed by the preceding postponement, and without further notice make such sale at the time fixed by the last postponement; or Trustee may, in its discretion, give a new notice of sale. Beneficiary may rescind any such notice of default at any time before Trustee's sale by executing a notice of rescission and recording the same. The recordation of such notice shall constitute a cancellation of any prior declaration of default and demand for sale and of any acceleration of maturity of Indebtedness affected by any prior declaration or notice of default. The exercise by Beneficiary of the right of rescission shall not constitute a waiver of any default then existing or subsequently occurring, or impair the right of Beneficiary to execute other declarations of default and demand for sale, or notices of default and of election to cause the Property to be sold, or otherwise affect the Note or this Deed of Trust, or any of the rights, obligations or remedies of Beneficiary or Trustee hereunder.

D.  In the event of a sale of the Property, or any part thereof, and the execution of a deed therefor, the recital therein of default, and of recording the notice of default and notice of sale, and of the elapse of the required time (if any) between the recording and the notice, and of the giving of notice of sale, and of a demand by Beneficiary, or its successors or assigns, that such sale should be made, shall be conclusive proof of such default, recording, election, elapse of time, and giving of such notice, and that the sale was regularly and validly made on due and proper demand by Beneficiary, its successors or assigns. Any such deed or deeds with such recitals therein shall be effective and conclusive against Trustor, its successors and assigns, and all other Persons. The receipt for the purchase money recited or contained in any deed executed to the purchaser as aforesaid shall be sufficient discharge to such purchaser from all obligations to see to the proper application of the purchase money.

E.  All remedies of Beneficiary provided for herein are cumulative and shall be in addition to any and all other rights and remedies provided in the other Loan Documents or by law, including any right of offset. The exercise of any right or remedy by Beneficiary hereunder shall not in any way constitute a cure or waiver of default hereunder or under the Loan Documents, or invalidate any act done pursuant to any notice of default, or prejudice Beneficiary in the exercise of any of its rights hereunder or under the Loan Documents.

F.  All sums expended by Trustee or Beneficiary in the exercise of any of their rights or remedies under this Deed of Trust, and all reasonable costs and expenses incurred in connection therewith shall (i) be immediately due and payable on demand, (ii) accrue interest at the Default Rate from the date of expenditure by Beneficiary, and (iii) be added to the Indebtedness and secured by the Loan Documents prior to any right, title or interest in or claim upon the Property attaching or accruing subsequent to the lien of this Deed of Trust.

G.  If Beneficiary submits a payoff demand to Trustor in connection with the maturity of the Loan, Trustor shall promptly communicate to Beneficiary or Beneficiary's collection agent any dispute, along with an explanation, as to the total payoff amount provided. Trustor's full payoff of the loan shall constitute: (i) Trustor's review and approval of the total payoff amount; (ii) Trustor's full release of Beneficiary, and any collection agent of Beneficiary, from any and all claims of any kind arising out of or related to the debt, total payoff amount, and calculation of all sums charged; and (iii) Trustor's final settlement, waiver and release of any and all claims against Beneficiary or Beneficiary's collection agent. All persons or entities, including any escrow or title company, who may pay the total payoff amount on behalf of Trustor, shall have full power and authority to bind the Trustor to the provisions of this paragraph. Beneficiary shall retain any documents, schedules, invoices or other papers delivered by Trustor only for such period as Beneficiary, at its sole discretion, may determine necessary, after which time Beneficiary may destroy such records without notice to or consent from Trustor. In connection with this <u>Paragraph 3.2G</u>, Trustor expressly waives the benefits of Section 1542 of the California Civil Code, which provides as follows: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST

12

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 22 of 44

HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR." BUYER ACKNOWLEDGES AND AGREES THAT IT HAS BEEN REPRESENTED BY LEGAL COUNSEL OF ITS CHOICE IN CONNECTION WITH THIS AGREEMENT, AND THAT SUCH COUNSEL HAS EXPLAINED TO BUYER THE PROVISIONS OF THIS PARAGRAPH 3.2G.

TRUSTOR'S INITIALS:____

## ARTICLE 7
## SECURITY AGREEMENT AND FIXTURE FILING

7.1  Grant of Security Interest.  Trustor hereby grants to Beneficiary a security interest in and to all Trustor's right, title and interest now owned or hereafter acquired in and to the Collateral).

7.2  Remedies.  This Deed of Trust constitutes a security agreement under the California Uniform Commercial Code with respect to the Collateral in which Beneficiary is hereby granted a security interest.  In addition to the rights and remedies provided under this Deed of Trust, Beneficiary shall have all of the rights and remedies of a secured party under the California Uniform Commercial Code as well as all other rights and remedies available at law or in equity.  Trustor shall execute and deliver on demand, and irrevocably constitutes and appoints Beneficiary the attorney-in-fact of Trustor to, at Trustor's expense, execute, deliver and, if appropriate, to file with the appropriate filing officer or office, such instruments as Beneficiary may request or require in order to impose, perfect or continue the perfection of the lien or security interest created hereby.  Upon the occurrence of any Event of Default, Beneficiary shall have the right (i) to cause any of the Collateral which is personal property to be sold at any one or more public or private sales as permitted by applicable law and to apply the proceeds thereof to the Indebtedness or the satisfaction of any Obligation and (ii) to apply to the Indebtedness or the satisfaction of any Obligation any Collateral which is cash, negotiable documents or chattel paper.  Any such disposition may be conducted by an employee or agent of Beneficiary or Trustee.  Any Person, including both of Trustor and Beneficiary, shall be eligible to purchase any part or all of such Personalty at any such disposition.

7.3  Expenses.  Expenses of retaking, holding, preparing for sale, selling or the like, pertaining to the Collateral shall be borne by Trustor and shall include Beneficiary's and Trustee's reasonable attorneys' fees and legal expenses (including, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses).  Trustor, upon demand of Beneficiary shall assemble the Collateral and make it available to Beneficiary at the Improvements, a place which is hereby deemed to be reasonably convenient to Beneficiary and Trustor.  Beneficiary shall give Trustor at least ten (10) days' prior written notice of the time and place of any public sale or other disposition of the Collateral or of the time after which any private sale or any other intended disposition is to be made.  Any such notice sent to Trustor in the manner provided for the mailing of notices herein is hereby deemed to be reasonable notice to Trustor.

7.4  Fixture Filing.  This Deed of Trust covers certain goods which are or are to become fixtures related to the Land and constitutes a fixture filing under the California Uniform Commercial Code with respect to such goods executed by Trustor as debtor in favor of Beneficiary as secured party.

7.5  Waivers.  Trustor waives (i) any right to require Beneficiary to (A) proceed against any Person, (B) proceed against or exhaust any Collateral or (C) pursue any other remedy in its power; and (ii) any defense arising by reason of any disability or other defense of Trustor or any other Person, or by reason of the cessation from any cause whatsoever of the liability of Trustor or any other Person.  Until the Indebtedness shall have been paid in full, Trustor shall not have any right to subrogation, and Trustor waives any right to enforce any remedy which Beneficiary now has or may hereafter have against Trustor or against any other Person and waives any benefit of and any right to participate in any Collateral or security whatsoever now or hereafter held by Beneficiary.

## ARTICLE 8
## ASSIGNMENT OF RENTS AND PROCEEDS AND AGREEMENTS

8.1  Assignment of Rents and Proceeds.  Trustor absolutely and unconditionally assigns and transfers the Rents and Proceeds to Beneficiary, whether now due, past due or to become due, and gives to and confers upon Beneficiary the right, power and authority to collect such Rents and Proceeds, and apply the same to the Indebtedness or the satisfaction of any Obligation.  Trustor irrevocably appoints Beneficiary its agent to, at any time, demand, receive and enforce payment, to give receipts, releases and satisfactions, and to sue, either in the name of Trustor or in the name of Beneficiary, for all such Rents and Proceeds.  Neither the foregoing assignment of Rents and Proceeds to Beneficiary or the exercise by Beneficiary of any of its rights or remedies under this Deed of Trust shall be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation of all or any part thereof, unless and until Beneficiary, in person or by its own agent, assumes actual possession thereof, nor shall appointment of a Receiver for the Property by any court at the request of Beneficiary or by agreement with Trustor or the entering into possession of the Property by such Receiver be deemed to make Beneficiary a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Property or the use, occupancy, enjoyment or operation thereof.

13

Case: 17-51958   Doc# 28-2   Filed: 09/26/17   Entered: 09/26/17 16:23:25   Page 23 of 44

8.2 _Assignment of Agreements_. Trustor hereby sells, assigns, transfers, sets over and delivers to Beneficiary all of Trustor's right, title and interest in and to any and all agreements, bonds, contracts, letters of credit, reports, surety agreements, surveys, plans, drawings and governmental approvals whatsoever pertaining to the operation of the Property or to the construction of the Improvements, as the same may be amended or otherwise modified from time to time (collectively, the "Agreements"). The foregoing assignment encompasses the right of Trustor to (i) terminate any of the Agreements, (ii) perform or compel performance and otherwise exercise all remedies under the Agreements, and (iii) collect and receive all sums which may become due Trustor or which Trustor may now or shall hereafter become entitled to demand or claim, under the Agreements.

8.3 _Revocable License_. Notwithstanding anything to the contrary contained herein or in the Note, so long as no Event of Default shall have occurred, Trustor shall have a license to collect all Rents and Proceeds and all other sums which may become payable to Trustor under the Agreements, and to first apply the same to the payment or performance of the Obligations as and when due. Upon the occurrence of an Event of Default, Beneficiary shall have the right, on written notice to Trustor, (i) to terminate and revoke the license herein granted to Trustor and (ii) Trustor shall immediately forward and turn over to Beneficiary all Rents and Proceeds (including, without limitation, all security deposits and termination payments) then held or thereafter received by Trustor to exercise and enforce any and all of its rights and remedies provided in this Article 8 or by law or at equity.

8.4 _Nonresponsibility_. The acceptance by Beneficiary of the assignments with all the rights, powers, privileges and authority so granted shall not obligate Beneficiary to assume any obligations in respect of the Rents and Proceeds or under the Agreements or take any action thereunder or to expend any money or incur any expense or perform or discharge any obligation, duty or liability in respect of the Rents and Proceeds or under the Agreements or to assume any obligation or responsibility for the nonperformance of the provisions thereof by Trustor.

ARTICLE 9
MISCELLANEOUS

9.1 _Successor Trustee_. Beneficiary may remove Trustee or any successor trustee at any time or times and appoint a successor trustee by recording a written substitution in the county where the Property is located, or in any other manner permitted by law.

9.2 _No Waiver_. No failure by Beneficiary to insist upon strict, full and complete (i) payment when due of any portion of the Indebtedness or (ii) performance of any Obligation, nor failure to exercise any right or remedy hereunder, shall constitute a waiver of any such failure to pay or breach of any such Obligation, or of the later exercise of such right or remedy.

9.3 _Abandonment_. Any and all Personalty that upon foreclosure of the Property is owned by Trustor and is used in connection with the operation of the Property shall be deemed at the option of Beneficiary to have become on such date a part of the Property and abandoned to Beneficiary in its then condition.

9.4 _Notices_. All notices or other written communications hereunder or under any other Loan Documents shall be given in writing (i) in person or by facsimile transmission with receipt acknowledged, (ii) by overnight delivery with Federal Express or another comparable overnight courier service, or (iii) by mail sent by registered or certified mail, postage prepaid, return receipt requested, to the addresses for the parties specified at the beginning of this Deed of Trust. The notice address of the parties set forth above may be changed by written notice given hereunder. All such notices shall be considered delivered: (i) if personally delivered or sent by facsimile transmission, on the date of delivery; (ii) if sent by United States Mail in the manner prescribed above, on the date shown on the return receipt for acceptance or rejection; or (iii) if sent by courier delivery service, on the date of delivery or rejection as shown by the written delivery record of such service.

9.5 _Severability_. If any provision hereof or of any other Loan Document is held unenforceable or void, that provision shall be deemed severable from the remaining provisions and in no way affect the validity of this Deed of Trust or any other Loan Document, except that if such provision relates to the payment of any monetary sum, then Beneficiary may, at its option, declare the Indebtedness immediately due and payable.

9.6 _Joinder of Foreclosure_. Should Beneficiary hold any other or additional security for the performance of the Obligations, its sale or foreclosure, upon any default in such performance, in the sole discretion of Beneficiary, may be prior to, subsequent to, or joined or otherwise contemporaneous with any sale or foreclosure hereunder.

9.7 _Governing Law_. This Deed of Trust shall be governed by and construed in accordance with the laws of the State of California, in accordance with the internal laws of the State of California, without regard to conflicts of laws and principles.

Chavez – DOT, Modesto, CA

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 24 of 44

9.8  Subordination.  At the option of Beneficiary, exercised in its sole and absolute discretion, this Deed of Trust and/or any other Loan Document shall become subject and subordinate in whole or in part (but not with respect to priority of entitlement to any insurance proceeds, damages, awards, or compensation resulting from damage to the Property or condemnation or exercise of power of eminent domain), to any and all contracts of sale and/or any and all Leases upon the execution by Beneficiary and recording thereof in the Official Records of the county where the affected Land is located of a unilateral declaration to that effect.  Beneficiary may require the issuance of such title insurance endorsements to the title policy in connection with any such subordination as Beneficiary, in its reasonable judgment, shall determine are appropriate, and Trustor shall pay any cost or expense incurred in connection with the issuance thereof.

9.9  Waiver of Statute of Limitations.  Trustor hereby waives, to the full extent allowed by law, the right to plead any statute of limitations as a defense to any Obligations in any action under or relating to the Loan Documents.

9.10  Entire Agreement.  The Loan Documents set forth the entire understanding between Trustor and Beneficiary relative to the Loan and the same shall not be amended except by a written instrument duly executed by each of Trustor and Beneficiary.

9.11  Copies.  Trustor will promptly give to Beneficiary copies of all (i) notices of violation relating to the Property or the operation of any business thereon that Trustor receives, whether  from any governmental agency or authority or otherwise, (ii) notices of default that Trustor shall give or receive under any agreement that Trustor covenants to perform hereunder, and (iii) notices of claims made or threatened that would be adverse to the interest of Trustor in the Property (including without limitation claims of liens, judgments, and claims of unpaid or underpaid taxes).

9.12  Personalty Security Instruments.  If Beneficiary at any time holds additional security for any obligations secured hereby, it may enforce the terms thereof or otherwise realize upon the same, at its option, either before or concurrently herewith or after a sale is made hereunder, and may apply the proceeds upon the Indebtedness without affecting the status of or waiving any right to exhaust all or any other security, including the security hereunder, and without waiving any breach or default or any right or power whether exercised hereunder or contained herein or in any such other security.

9.13  Suits to Protect Property.  Trustor shall appear in and defend any action or proceeding purporting to affect the security of the Deed of Trust, any other Loan Documents, or of any additional or other security for the Obligations, the interest of Beneficiary or the rights, powers and duties of Trustee hereunder; and shall pay all costs and expenses, including cost of evidence of title, reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses, in any action or term, covenant or condition proceeding in which Beneficiary and/or Trustee may appear or be made a party, including foreclosure or other proceeding commenced by those claiming a right to any part of the Property in any action to partition or condemn all or part of the Property, whether or not pursued to final judgment, and in any exercise of the power of sale contained herein, whether or not the sale is actually consummated.  In any such action or proceeding in which Beneficiary is made a party, Beneficiary may at its option defend such action, and all costs of such defense, including all court costs and reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses, shall be borne and paid by Trustor.

9.14  Charges for Statements.  Trustor shall pay Beneficiary's charge, up to the maximum amount permitted by law, for any statement regarding the Obligations requested by Trustor or in its behalf.

9.15  Usury.  In the event that Beneficiary, or a court of competent jurisdiction in a final, non-appealable judgment determines that any charge, fee or interest paid or agreed to be paid in connection with the Loan may, under the applicable usury laws, cause the interest rate on the Loan to exceed the maximum permitted by law, then such charges, fees or interest shall be reduced and any amounts actually paid in excess of the maximum interest permitted by such laws shall be applied by Beneficiary to reduce the outstanding principal balance of the Loan.  The parties intend that Trustor shall not be required to pay, and Beneficiary shall not be entitled to collect, interest in excess of the maximum legal rate permitted under the applicable usury laws.

9.16  Publicity.  Beneficiary, at its expense, may publicize the financing of the Property.

9.17  Information Reporting Under IRS Section 6045(e).  Any information returns or certifications that must be filed with the Internal Revenue Service and/or provided to other parties pursuant to Internal Revenue Code Section 6045(e) shall be prepared, filed by and sent to the appropriate parties by Trustor.  To the extent permitted by law, Beneficiary shall have no responsibility to perform such services; provided however, that upon demand Trustor shall reimburse Beneficiary for any costs incurred by Beneficiary in doing so and shall also pay such fee as Beneficiary may reasonably and lawfully request.  Beneficiary shall, where requested by Trustor, promptly supply Trustor with all information pertaining to Beneficiary reasonably required by Trustor to prepare and file any such return or certification.

15

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 25 of 44

9.18  Indemnification and Defense.

A.  Trustor will indemnify, defend, protect and hold Beneficiary and its agents harmless from and against all liability, loss, claims, damage, cost or expense (including reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses) that Beneficiary might incur in connection with the making or administering of the Loan, the enforcement of any of Beneficiary's rights or remedies under the Loan Documents, by reason of any failure of any representation or warranty made by Trustor or the failure of Trustor to perform any Obligation or by reason or in defense of any and all claims and demands whatsoever that may be asserted against Beneficiary arising out of or in connection with the Property or the Loan.

B.  Trustor will indemnify, defend, protect and hold Beneficiary and its agents harmless from and against all liability, loss, claims, damage, cost or expense (including actual attorneys' fees incurred in good faith, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses) that Beneficiary might incur in connection with the making or administering of the Loan, the enforcement of any of Beneficiary's rights or remedies under the Loan Documents, by reason of any failure of any representation or warranty made by Trustor or the failure of Trustor to perform any Obligation or by reason or in defense of any and all claims and demands whatsoever that may be asserted against Beneficiary arising out of or in connection with the Property or the Loan, including without limitation arising out of or in connection with the presence of Hazardous Materials at or about the Property, or emanating from the Property.

C.  Whenever, under any Loan Document, Trustor is obligated to indemnify and/or defend Beneficiary, or Trustor is obligated to defend or prosecute any action or proceeding, then Beneficiary shall have the right to participate in such prosecution or defense using counsel of Beneficiary's choice, and all costs and expenses incurred by Beneficiary in connection with such participation (including reasonable attorneys' fees, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage and communication expenses) shall be reimbursed by Trustor to Beneficiary. In addition, Beneficiary shall have the right to approve any counsel retained by Trustor in connection with the prosecution or defense of any such action or proceeding by Trustor.  Trustor shall give notice to Beneficiary of the initiation of all proceedings prosecuted or required to be defended by Trustor, or which are subject to Trustor's indemnity and/or defense obligations, under this Deed of Trust, promptly after the receipt by Trustor of notice of the existence of any such proceeding, but in no event later than five (5) days thereafter.

D.  Should Beneficiary incur any liability, loss, claim, damage, cost or expense required to be reimbursed by Trustor to Beneficiary hereunder, the amount thereof with interest thereon at the Default Rate shall constitute part of the Indebtedness, shall be payable by Trustor upon demand and shall be secured by this Deed of Trust.

9.19  Destruction of Note/Compliance.  Trustor shall, if the Note is mutilated or destroyed by any cause whatsoever, or otherwise lost or stolen and regardless of whether due to the act or neglect of Beneficiary or Trustee, execute and deliver to Beneficiary in substitution therefor a duplicate promissory note containing the same terms and conditions as the Note, within ten (10) days after Beneficiary notifies Trustor of any such mutilation, destruction, loss or theft of the Note. Trustor agrees at any time upon request by Beneficiary to fully cooperate in adjusting for clerical errors any of the Loan Documents and any and all loan closing documentation, including without limitation as necessary to enable Beneficiary to sell, convey, seek guaranty or market this loan to any entity, including but not limited to an investor, Federal National Mortgage Association, Federal Home Loan Mortgage Corporation, Federal Housing Authority or the Veterans Administration. Trustor agrees and covenants to fully cooperate with Beneficiary, including any successors in interest to Beneficiary, in order to assure that the loan documentation executed upon origination, including amendments subsequent thereto, will conform with applicable law and be acceptable in the market place in the instance of transfer, sale or conveyance by Beneficiary of its interest in and to said loan documentation.

9.20  Heirs and Assigns.  Subject to the restrictions on Transfers contained in this Deed of Trust, this Deed of Trust and all other Loan Documents apply to, inure to the benefit of, and bind all parties hereto and thereto, their heirs, legatees, devisees, administrators, executors, successors and assigns.

9.21  Interpretation.  When the identity of the parties or other circumstances make it appropriate, the masculine gender shall include the feminine and/or neuter, and the singular number shall include the plural.  Specific enumeration of rights, powers and remedies of Trustee and Beneficiary and of acts which they may do and of acts Trustor must do or not do shall not exclude or limit the general.  The headings of each Article and Paragraph are for convenience and do not limit or construe the contents of any provision hereof.  The provisions of the Loan Documents shall be construed as a whole according to their common meaning, not strictly for or against any party and consistent with the provisions herein contained, in order to achieve the objectives and purposes of such documents.  Each party and its counsel has reviewed and revised the Loan Documents and agree that the normal rule of construction to the effect that any ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of such document.

16

Case: 17-51958     Doc# 28-2     Filed: 09/26/17     Entered: 09/26/17 16:23:25     Page 26 of 44

The use in the Loan Documents of the words "including", "such as", or words of similar import when following any general term, statement or matter shall not be construed to limit such statement, term or matter to the specific items or matters, whether or not language of non-limitation such as "without limitation" or "but not limited to", or words of similar import are used with reference thereto, but rather shall be deemed to refer to all other items or matters that could reasonably fall within the broadest possible scope of such statement, term or matter. References to "foreclosure" and related phrases shall be deemed references to the appropriate procedure in connection with Trustee's private power of sale as well as any judicial foreclosure proceeding or a conveyance in lieu of foreclosure.

9.22    Transfers by Beneficiary to Third Persons.  Trustor understands and acknowledges that after the closing of the Loan, the Loan may be sold by Beneficiary to a third Person and such third Person may subsequently transfer the Loan and, in connection therewith, all of the Loan Documents would be assigned by Beneficiary in connection with such transfer to such third Person (and, subsequently, to all subsequent transferees). Trustor hereby acknowledges that upon such assignment of the Loan Documents by Beneficiary to such third Person or subsequent transferees, Beneficiary shall have no obligations or liabilities under the Loan Documents, such third Person (or other subsequent transferee) shall be substituted as the "Lender" under the Loan Documents for all purposes and Trustor shall look solely to such third Person or subsequent transferee for the performance of any obligations of the "Lender" under the Loan Documents. If, at any time, Beneficiary desires to sell or transfer, or grant a participation interest in, all or any portion of, or any interest in, the Note or any other Loan Document to any third Person, Trustor shall furnish in a timely manner any and all information concerning the Property and Leases, and concerning Trustor, requested by Beneficiary or such third Person in connection with any such sale or transfer. Beneficiary shall have the right to furnish to any third Person in connection with any such sale or transfer any and all information Beneficiary now has or may later acquire from Trustor relating to the Obligations.

9.23    Commingling of Funds.  Any and all sums collected or retained by Beneficiary under any of the Loan Documents (including insurance and condemnation proceeds and any amounts paid by Trustor to Beneficiary under Paragraph 3.4 hereof), shall not be deemed to be held in trust, and Beneficiary may commingle such funds or proceeds with its general assets and shall not be liable for the payment of any interest or other return thereon, except to the extent otherwise required by law.

9.24    Certain Obligations Unsecured.  Notwithstanding anything to the contrary set forth herein or any of the Loan Documents, this Deed of Trust does not secure any obligations in this Deed of Trust or in any of the other Loan Documents to the extent that such other obligations relate specifically to the presence on the Property of toxic or hazardous materials (the "Unsecured Obligations"). Any breach or default with respect to the Unsecured Obligations shall constitute an Event of Default hereunder, notwithstanding the fact that such Unsecured Obligations are not secured by this Deed of Trust. Nothing in this section shall, in itself, impair or limit Beneficiary's right to obtain a judgment in accordance with applicable law after foreclosure for any deficiency in recovery of all obligations that are secured by this Deed of Trust following foreclosure.

9.25    Costs and Fees.  All costs, fees and expenses incurred by Beneficiary in making, administering or collecting the Loan (including those of Beneficiary's legal counsel and consultants, court costs, expert witness fees, document reproduction expenses, costs of exhibit preparation, courier charges, postage, communication expenses and costs in connection with any inspections, reports, tests, inquiries and reviews, condemnation proceedings, endorsements to the title policy, actions or proceedings in which Beneficiary and/or Trustee may appear or be made a party, foreclosure or other proceedings commenced by those claiming a right to any part of the Property or any action to partition all or part of the Property, whether or not pursuant to final judgment and exercise of the power of sale contained herein, whether or not the sale is actually consummated) and all sums expended by Trustee or Beneficiary in the exercise of any of their respective rights or remedies under this Deed of Trust, shall be immediately due and payable by Trustor to Beneficiary upon demand, shall accrue interest at the Default Rate from the date of expenditure until paid, and shall be added to the Indebtedness secured by the Loan Documents prior to any right, title or interest in or claim upon the Property attaching or accruing subsequent to the lien of this Deed of Trust.

9.26    Standard of Approval; Covenant of Good Faith and Fair Dealing.  Whenever Trustee or Beneficiary has been specifically granted a right to exercise its business judgment, or act, in a subjective manner, with respect to any matter, or the right to act in its sole and absolute discretion or sole judgment, or the right to make a subjective judgment under any provision of this Deed of Trust, whether or not "objectively" reasonable under the circumstances, any such exercise shall not be deemed inconsistent with any covenant of good faith and fair dealing otherwise implied by law to be part of the Loan Documents.

9.27    Exhibits.  The Exhibits attached to this Deed of Trust are deemed incorporated into this Deed of Trust in its entirety.

9.28    Attorneys' Fees.  If any suit, action or proceeding of any kind (an "action") is brought by any party hereto to enforce, defend or interpret any provision of this Deed of Trust or any of the Loan Documents (including an action for declaratory relief), the prevailing party in such action shall recover from the other non-prevailing parties to such action all reasonable costs and expenses which the prevailing party may incur in bringing such action and/or enforcing any judgment granted therein, all of which shall be deemed to have accrued upon the commencement of such action and shall be paid whether or not such action is prosecuted to

17

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 27 of 44

judgment. The "prevailing party" means the party entitled to recover costs of suit, whether or not any action proceeds to final judgment. Any judgment or order entered in such action shall specifically provide for the recovery of all reasonable costs and expenses incurred by the prevailing party in connection therewith including costs and expenses incurred in enforcing such judgment. For the purpose of this Paragraph 9.28, "costs and expenses" include all court costs and attorneys' fees, such as court costs and attorneys' fees incurred in connection with any of the following: (i) post-judgment motions, (ii) contempt proceedings, (iii) garnishment, levy and debtor and third party examinations, (iv) discovery, and (v) bankruptcy litigation. Beneficiary shall have the right (but not the obligation) to commence, appear in, or defend any action purporting to affect any of the interests, rights, obligations or liabilities of Beneficiary or Trustor in connection with this Deed of Trust or any of the Loan Documents, and Trustor shall pay to Beneficiary on demand all costs and expenses reasonably incurred by Beneficiary in connection therewith.

9.29   JURISDICTION; WAIVERS; JUDICIAL REFERENCE.

A.    JURISDICTION. WITH RESPECT TO ANY SUIT, ACTION OR PROCEEDINGS BASED UPON, ARISING OUT OF, OR RELATING TO, THE LOAN, ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT OR INSTRUMENT BETWEEN THE PARTIES RELATING TO THE LOAN OR THE LOAN DOCUMENTS (EACH A "DOCUMENT", AND COLLECTIVELY, ANY OR ALL, THE "DOCUMENTS"), THE PROPERTY, THE RELATIONSHIP OF TRUSTOR AND BENEFICIARY HEREUNDER OR ANY DEALINGS BETWEEN THE PARTIES RELATING TO THE LOAN (EACH A "PROCEEDING", AND COLLECTIVELY, ANY OR ALL, THE "PROCEEDINGS"), EACH PARTY IRREVOCABLY (i) SUBMITS TO THE EXCLUSIVE JURISDICTION OF THE COURTS OF THE STATE OF CALIFORNIA AND THE UNITED STATES DISTRICT COURTS LOCATED IN THE STATE OF CALIFORNIA, (ii) AGREES THAT THE EXCLUSIVE VENUE FOR A JUDICIAL REFERENCE PROCEEDING PURSUANT TO SECTION 9.29.C BELOW SHALL BE THE COUNTY OF SANTA CLARA, CALIFORNIA, AND (iii) WAIVES ANY OBJECTION WHICH IT MAY HAVE AT ANY TIME TO THE LAYING OF VENUE OF ANY PROCEEDINGS BROUGHT IN ANY SUCH COURT, WAIVES ANY CLAIM THAT SUCH PROCEEDINGS HAVE BEEN BROUGHT IN AN INCONVENIENT FORUM, AND WAIVES THE RIGHT TO OBJECT, WITH RESPECT TO ANY PROCEEDING, THAT SUCH COURT DOES NOT HAVE JURISDICTION OVER SUCH PARTY.

B.    WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY LAW, EACH OF THE PARTIES HEREBY AGREES TO, AND DOES, WAIVE ITS RESPECTIVE RIGHTS TO A JURY TRIAL IN ANY PROCEEDING. THE SCOPE OF THIS WAIVER IS INTENDED TO BE ALL-ENCOMPASSING OF ANY AND ALL DISPUTES INVOLVED IN ANY PROCEEDINGS OF ANY KIND WHATSOEVER THAT MAY BE FILED IN ANY COURT, INCLUDING CONTRACT CLAIMS, TORT CLAIMS, ANTITRUST CLAIMS, BREACH OF DUTY CLAIMS, AND ALL OTHER COMMON-LAW OR STATUTORY CLAIMS. IN THE EVENT OF PROCEEDING IN A COURT, THIS AGREEMENT MAY BE FILED AS A WRITTEN CONSENT TO A TRIAL BY SUCH COURT WITHOUT A JURY.

C.    Consent to Judicial Reference. If and to the extent that Paragraph 9.29.B is determined by a court of competent jurisdiction to be unenforceable or is otherwise not applied by any such court, each party hereby consents and agrees that (i) any and all Proceedings shall be heard by a referee in accordance with the general reference provisions of California Code of Civil Procedure Section 638, et seq., as amended from time to time, in accordance with this Paragraph 9.29.C, sitting without a jury, in the County of Santa Clara, California, (ii) such referee shall hear and determine all of the issues in any Proceeding (whether of fact or of law), including issues pertaining to a "provisional remedy" as defined in California Code of Civil Procedure Section 1281.8, such as entering restraining orders, entering temporary restraining orders, issuing temporary and permanent injunctions and appointing receivers, and shall report a statement of decision as provided by California Code of Civil Procedure Section 643 in writing to the court, except that if, during the course of any Proceeding either party desires to seek such a provisional remedy but a referee has not been appointed, or is otherwise unavailable to hear the request for such provisional remedy, then such party may apply to the Santa Clara County Superior Court for such provisional relief, and (iii) pursuant to California Code of Civil Procedure Section 644, judgment may be entered upon the decision of such referee in the same manner as if the Proceeding had been tried directly by a court of competent jurisdiction. THE REFEREE SHALL NOT HAVE THE AUTHORITY TO AWARD PUNITIVE DAMAGES TO EITHER PARTY, AND EACH PARTY HEREBY WAIVES ANY RIGHT TO AN AWARD OF PUNITIVE DAMAGES. The parties shall use commercially reasonable and good faith efforts to agree upon and select such referee, provided that such referee must be a retired California state or federal judge, and that further provided if the parties cannot agree upon a referee, the referee shall be appointed by the Presiding Judge of the Santa Clara County Superior Court. The referee shall resolve any discovery disputes. The referee shall not permit any members of the public or the media to attend the hearing. Unless the parties agree otherwise, the hearing shall be recorded by a court reporter. The parties shall share the cost of the referee and reference proceedings equally; provided that the referee may award attorneys' fees and reimbursement of the referee and reference proceeding fees and costs to the prevailing party, whereupon all referee and reference proceeding fees and charges will be payable by the non-prevailing party (as so determined by the referee). This Agreement may be filed as evidence of

18

Case: 17-51958   Doc# 28-2   Filed: 09/26/17   Entered: 09/26/17 16:23:25   Page 28 of 44

either or both parties' consent and agreement to have any and all Proceedings heard and determined by a referee under California Code of Civil Procedure Section 638, *et seq*. EACH PARTY AGREES TO HAVE ANY DISPUTE ARISING OUT OF THE MATTERS INCLUDED IN THIS "CONSENT TO JUDICIAL REFERENCE" PROVISION DECIDED BY A GENERAL REFERENCE PROCEEDING IN ACCORDANCE WITH THIS PARAGRAPH 9.29.C, WITH A REFEREE AND NOT A JUDGE, AND IS GIVING UP ANY RIGHTS IT MIGHT POSSESS TO HAVE THE DISPUTE LITIGATED IN A COURT OR BEFORE A TRIAL JURY. EACH PARTY ALSO IS WAIVING ANY RIGHT TO RECEIVE PUNITIVE DAMAGES. IF A PARTY REFUSES TO SUBMIT TO A GENERAL REFERENCE PROCEEDING AFTER AGREEING TO THIS PROVISION, IT MAY BE COMPELLED TO PARTICIPATE IN THE GENERAL REFERENCE PROCEEDING UNDER THE AUTHORITY OF THE CALIFORNIA CODE OF CIVIL PROCEDURE. EACH PARTY'S AGREEMENT TO THIS GENERAL REPFERENCE PROVISION IS VOLUNTARY. EACH PARTY HAS READ AND UNDERSTANDS THE FOREGOING PROVISION AND VOLUNTARILY AGREES TO SUBMIT PROCEEDINGS TO A GENERAL REFERENCE PROCEEDING BEFORE A REFEREE IN ACCORDANCE WITH THIS PARAGRAPH 9.29.C, RATHER THAN A COURT OR JURY AND TO WAIVE ANY RIGHT TO PUNITIVE DAMAGES.

D.    Applicability to Non-Judicial Foreclosures and Realization on Collateral. Notwithstanding anything to the contrary contained in this Paragraph 9.29, the parties understand, acknowledge and agree that a Proceeding does not include any non-judicial foreclosure of all or any portion of the Property whether pursuant to the provisions of any Document or applicable law, including non-judicial foreclosure pursuant to the applicable provisions of the California Civil Code and non-judicial foreclosure and/or private sale pursuant to the California Commercial Code, except that the provisions of Paragraphs 9.29.B and 9.29.C shall apply to any Proceeding brought by Trustor to contest any such non-judicial foreclosure and/or private sale (but not the non-judicial foreclosure and/or private sale, which shall remain pending) and the provisions of this Paragraph 9.29 shall not be deemed to be a waiver by Beneficiary of its right to proceed with a non-judicial foreclosure or private sale under applicable law as a permitted remedy under any Loan Document or under applicable law.

E.    ACKNOWLEDGEMENTS RELATED TO WAIVERS. EACH PARTY ACKNOWLEDGES THAT THE WAIVERS CONTAINED IN THIS PARAGRAPH 9.29 ARE A MATERIAL INDUCEMENT TO ENTERING INTO THE LOAN DOCUMENTS AND BENEFICIARY'S WILLINGNESS TO MAKE THE LOAN TO TRUSTOR, AND THAT EACH PARTY WILL CONTINUE TO BE BOUND BY AND RELY ON THIS WAIVER IN THEIR RELATED FUTURE DEALINGS. EACH PARTY FURTHER WARRANTS AND REPRESENTS THAT IT HAS REVIEWED ALL WAIVERS CONTAINED IN THIS PARAGRAPH 9.29 WITH LEGAL COUNSEL OF ITS OWN CHOOSING, OR HAS HAD AN OPPORTUNITY TO DO SO, AND THAT IT KNOWINGLY AND VOLUNTARILY WAIVES ITS RIGHTS AS SPECIFIED IN THIS PARAGRAPH 9.29 (INCLUDING JURISDICTION AND VENUE, THE RIGHT TO A COURT AND/OR JURY TRIAL, AND THE RIGHT TO CLAIM PUNITIVE DAMAGES) HAVING HAD THE OPPORTUNITY TO CONSULT WITH LEGAL COUNSEL. THESE WAIVERS ARE IRREVOCABLE, MEANING THAT THEY MAY NOT BE MODIFIED EITHER ORALLY OR IN WRITING, AND THESE WAIVERS SHALL APPLY TO ANY SUBSEQUENT AMENDMENTS, RENEWALS, SUPPLEMENTS, OR MODIFICATIONS TO THIS DEED OF TRUST, ANY OTHER LOAN DOCUMENT, OR ANY OTHER DOCUMENT ENTERED INTO BETWEEN THE PARTIES.

F.    SURVIVAL. THE PROVISIONS OF THIS PARAGRAPH 9.29 SHALL SURVIVE THE CLOSING OF THE LOAN (AND NOT BE MERGED THEREIN) OR ANY TERMINATION OF THE LOAN OR ANY LOAN DOCUMENT OR ANY OTHER DOCUMENT.

9.30    Joint and Several Liability. If Trustor is comprised of more than one (1) Person, then the Obligations are joint and several undertakings of each of the Trustors, and Beneficiary may proceed against any one or more of the Trustors without waiving its right to proceed against any of the other Trustors.

9.31    General Partner Liability. Notwithstanding any contrary provision of applicable law, if Trustor is a limited partnership or any constituent entity of Trustor is a limited partnership, each general partner of Trustor or of any constituent entity of Trustor, agrees that Beneficiary need not exhaust the partnership assets of such partnership before executing upon the assets of such general partner in satisfaction of the obligations evidenced hereby or by any other document, instrument or agreement entered into by such partnership in connection with the Loan, but may execute upon such general partner's assets prior to, at the same time as, or after executing upon the partnership assets of such partnership. Each such general partner shall be jointly and severally liable for such obligations with all other persons and entities liable therefor. Upon Beneficiary's request, Trustor shall cause each any every person or entity becoming a general partner after the date of this Deed of Trust to execute an instrument agreeing to the provisions of this Section 9.31.

Case: 17-51958    Doc# 28-2    Filed: 09/26/17    Entered: 09/26/17 16:23:25    Page 29 of 44

IN WITNESS WHEREOF, Trustor has caused this Deed of Trust to be executed as of the day and year first above written.

TRUSTOR:

LILIA CHAVEZ

20

Chavez – DOT, Modesto, CA

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of _Santa Clara_

On _Feb. 20_____, 20_15_, before me, _DESTINY HONG_, Notary Public, personally appeared _LILIA CHAVEZ_ _____ who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____ (Seal)

DESTINY HONG
COMM. #2003264
Notary Public - California
Santa Clara County
My Comm. Expires Jan. 6, 2017

## EXHIBIT A

Real property in the unincorporated area of the County of Stanislaus, State of California, described as follows:

PARCEL: A

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF STANISLAUS, STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS: LOT 31 OF HIGH SCHOOL ACRE TRACT, ACCORDING TO THE MAP THEREOF, FILED FOR RECORD ON AUGUST 19, 191HN VOL. 9 OF MAPS, PAGE 68, STANISLAUS COUNTY RECORDS.

APN: 030-015-029

PARCEL: B

THE EAST 50 FEET OF LOTS 13 AND 19 OF GRAHAM ACRES, ACCORDING TO THE MAP THEREOF, FILED FOR RECORD ON JULY 16, 1912 IN VOL. 6 OF MAPS, PAGE 49, STANISLAUS COUNTY RECORDS.

APN: 037-032-016

PARCEL: C

LOTS 25 AND 26 IN BLOCK 414, OF THE CITY OF MODESTO, AS PER MAP FILED DECEMBER 21, 1942 IN BOOK 15 OF MAPS, STANISLAUS COUNTY RECORDS.
APN: 101-006-081

PARCEL: D

LOT 1 OF PARADISE PARK TRACT, AS PER MAP FILED APRIL 20, 1916 IN VOLUME 8 OF MAPS, PAGE 39, STANISLAUS COUNTY RECORDS.

EXCEPTING THEREFROM THE NORTH 117 FEET, FRONT AND REAR MEASUREMENTS. ALSO EXCEPTING THEREFROM THE SOUTH 116.29 FEET, FRONT AND REAR MEASUREMENTS OF THE EAST 208.145 FEET.

APN: 037-004-025

# EXHIBIT C

| | Lilia Chavez | | |
|---|---|---|---|
| | Loan # xxxxx6003 | | |
| | | | |
| | Ch 13 Petition Date | | 8/16/2017 |
| | Date of Claim | | 9/22/2017 |
| | | | |
| | **Pre Petiation** | | |
| | | | |
| | Unpaid Principal Balance | | $372,515.01 |
| | Accrued Interest | | $81,542.57 |
| * | Interest Credit | | -$1,629.47 |
| | Per Diem | $181.0525 | |
| | Servicer Fees | | $200.00 |
| | Late Charges | | $1,271.84 |
| | Late Payoff Penalty | | $41,408.35 |
| | Additional Legal | | $492.50 |
| | Total Pre Petition | | $495,800.80 |
| | | | |
| | **Post Petetion** | | |
| | Interest | | $6,698.94 |
| | | | |
| | **Line 9** | | $502,499.74 |
| | | | |
| * | 9 days of interest credited from 8-16-17 to 8-25-17 | | |

# EXHIBIT D

# AARON WEST

Realtor, *PMZ Real Estate*
Owner, *The West Experience Real Estate Group*
1600 N Carpenter Rd, Suite A1, Modesto CA 95351
209.484.1651 | aaron@thewestexperience.com

## EXPERIENCE AND RECOGNITION

- #2 Agent for PMZ Real Estate for 2016 (600+ Agents)
- Wall Street Journal - #99 Highest producing agent in California for 2016
- Certified Residential Specialist since 2007 - Highest national designation given to only the top 5% of Realtors
- Lodi Association of Realtors – Lifetime Member
- Multiple Year recipient of the Paul M Zagaris Awards – PMZ's highest recognition award for volume and transactions.
- Closed 800+ properties
- Over $175 Million Career Sales Volume

## PERSONAL

- Aaron and his wife, Jennifer are the parents of two Sons
- Member, Modesto Rotary Club
- Board Member, Boys & Girls Club of Stanislaus County
    - Chair for annual Haunted Museum
- Volunteer for Earthquakes East Valley Soccer Club



To whom it may concern at the Bankruptcy Court,

I have driven by the subject property at 1004 Panama street. After looking at the comparables, the market value of the property is $150,000.00. The home is in poor condition and the back units have no value as they are red tagged and done without permits.

Thank you,

Aaron West CRS

Owner

1800 North Carpenter Road, Suite A-1
Modesto, CA 95351
209.553.8844 | aaron@thewestexperience.com

www.thewestexperience.com

Listings as of 9/21/2017 3:08:22 PM

Property Type: Residential  Include Property Subtype: 1 House on Lot  Statuses: Active, Active Rel. Clause, Active Short Sale, Active Short Cont.,  Page 1
Active Court Appr., Active Court Cont., Pending, Pending Short LAppvl, Pending Bring Backup, Sold (3/25/2017 or after) , Exp. Pending (3/25/2017 or
after) , Expired (3/25/2017 or after)  Structure: 1100 to 1500 (also includes 0 values) Radius
Address: 1004 Panama Dr, Modesto, CA 95351  Radius: 0.75 Miles

## Residential
### Sold

| Address | City | Bd | Bth | SqFt | LotSz | Year | Date | $/SqFt | DOM/CDOM | Orig Price | List Price | Sale Price | SP % LP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 816 California | Modesto | 2 | 1 (1 0) | 1374 | 0.119ac | 1949 | 05/19/17 | 109.90 | 1/1 | 139,000 | 139,000 | 151,000 | 108.63 |
| 1425 Victoria Dr | Modesto | 2 | 1 (1 0) | 1335 | 0.193ac | 1936 | 04/14/17 | 116.10 | 5/5 | 145,000 | 145,000 | 155,000 | 106.90 |
| 2105 Olive Branch Dr | Modesto | 4 | 3 (3 0) | 1343 | 0.117ac | 1988 | 06/30/17 | 127.33 | 4/4 | 185,000 | 185,000 | 171,000 | 92.43 |
| Listing Count | 3 | Averages | | 1,351 | | | | 117.78 | 3/3 | 156,333 | 156,333 | 159,000 | 102.65 |
| | | | High | 171,000 | | | Low | 151,000 | | | Median | 155,000 | |
| Report Listing Count 3 | | Report Averages | | 1,351 | | | | 117.78 | 3/3 | 156,333 | 156,333 | 159,000 | |



**Presented By: Aaron C West**
License # 01504116
Primary: 209-484-1651
Secondary: 209-553-8844
Fax: 209-529-8949
Email: aaron@thewestexperience.com
http://www.thewestexperience.com

**PMZ Real Estate**
License # 00405158
1600 N. Carpenter Road, Ste. A
Modesto CA 95351
Phone: 209-527-2010
Fax: 209-529-8949
http://www.pmz.com



All measurements and all calculations of area are approximate. Information provided by Seller/Other sources, not verified by Broker. All interested persons should
independently verify accuracy of information. Provided properties may or may not be listed by the office/agent presenting the information. Copyright © 2017,
MetroList Services, Inc. Copyright © 2017, Rapattoni Corporation. All rights reserved.



The WEST EXPERIENCE

To whom it may concern at the Bankruptcy Court,

I have driven by the subject property at 1206 Figaro Ave. After looking at the comparables, the market value of the property is $150,000.00.  The home is in poor condition with a tarp covering the roof. The back unit has no value as it is red tagged and not done with permits.

Thank you,

Aaron West CRS

Owner

1600 North Carpenter Road, Suite A-1
Modesto, CA 95351

209.553.8844 | aaron@thewestexperience.com

www.thewestexperience.com

# CMA Report

### Sorted by On Market (asc), Area (asc), Price (asc)

Property Type: Residential  Include Property Subtype: 1 House on Lot  Statuses: Active, Active Rel. Clause, Active Short Sale, Active Short Cont.,  Page 1
Active Court Appr., Active Court Cont., Pending, Pending Short LAppvl, Pending Bring Backup, Sold (3/25/2017 or after)  Radius
Address: 1206 Figaro Ave, Modesto, CA 95351  Radius: 0.50 Miles

## Residential

### Active

| Address | City | Bd | Bth | SqFt | LotSz | Year | Date | $/SqFt | DOM/ CDOM | Orig Price | List Price |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 1317 Figaro Ave | Modesto | 2-3 | 1 (1 0) | 1144 | 0.321ac | 1974 | 05/29/17 | 122.38 | 113/113 | 175,000 | 140,000 |
| Listing Count  1 | Averages | | 1,144 | | | | | 122.38 | 113/113 | 175,000 | 140,000 |
| | | | High | 140,000 | | | Low | 140,000 | | Median | 140,000 |

### Sold

| Address | City | Bd | Bth | SqFt | LotSz | Year | Date | $/SqFt | DOM/ CDOM | Orig Price | List Price | Sale Price | SP % LP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 916 Colorado | Modesto | 2 | 1 (1 0) | 624 | 0.308ac | 1953 | 07/14/17 | 240.38 | 13/13 | 165,000 | 165,000 | 150,000 | 90.91 |
| 1200 Toulon Ct | Modesto | 3 | 2 (2 0) | 1040 | 6680 sf | 1971 | 09/06/17 | 158.65 | 124/124 | 189,000 | 179,000 | 165,000 | 92.18 |
| 1538 Kazmir Ct | Modesto | 2 | 1 (1 0) | 913 | 0.156ac | 1953 | 08/10/17 | 180.72 | 8/8 | 163,950 | 163,950 | 165,000 | 100.64 |
| Listing Count  3 | Averages | | 859 | | | | | 193.25 | 48/48 | 172,650 | 169,317 | 160,000 | 94.58 |
| | | | High | 165,000 | | | Low | 150,000 | | Median | 165,000 | | |
| Report Listing Count  4 | Report Averages | | 930 | | | | | 175.53 | 65/65 | 173,238 | 161,988 | 160,000 | |



**Presented By: Aaron C West**
License # 01504116
Primary: 209-484-1651
Secondary: 209-553-8844
Fax: 209-529-8949
Email: aaron@thewestexperience.com
http://www.thewestexperience.com

**PMZ Real Estate**
License # 00405158
1600 N. Carpenter Road, Ste. A
Modesto CA 95351
Phone: 209-527-2010
Fax: 209-529-8949
http://www.pmz.com



All measurements and all calculations of area are approximate. Information provided by Seller/Other sources, not verified by Broker. All interested persons should independently verify accuracy of information. Provided properties may or may not be listed by the office/agent presenting the information. Copyright © 2017, MetroList Services, Inc. Copyright © 2017, Rapattoni Corporation. All rights reserved.



To whom it may concern at the Bankruptcy Court,

I have driven by the subject property at 322 Pine street. After looking at the comparables I would put the market value of the property at $125,000.00. The homes that have sold at a higher price all had been recently remodeled with upgraded counters, new carpet and paint.

Thank you,

Aaron West CRS

Owner

1600 North Carpenter Road, Suite A-1
Modesto, CA 95351

209.553.8844 | aaron@thewestexperience.com

www.thewestexperience.com

Listings as of 9/21/2017 2:57:52 PM

Property Type: Residential   Statuses: Active, Active Rel. Clause, Active Short Sale, Active Short Cont., Active Court Appr., Active Court Cont.,   Page 1
Pending, Pending Short LAppvl, Pending Bring Backup, Sold (3/25/2017 or after) Bedrooms: 2.00 or less   Total Bathrooms: 1.00 or less   Radius
Address: 322 Pine, Modesto, CA 95351 Radius: 0.75 Miles

## Residential

### Sold

| Address | City | Bd | Bth | SqFt | LotSz | Year | Date | $/SqFt | DOM/ CDOM | Orig Price | List Price | Sale Price | SP % LP |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 423 Sutter Ave | Modesto | 2 | 1 (1 0) | 780 | 0.149ac | 1936 | 06/01/17 | 179.49 | 40/64 | 149,000 | 149,000 | 140,000 | 93.96 |
| 225 Rosemont Ave | Modesto | 2 | 1 (1 0) | 708 | 0.143ac | 1925 | 09/20/17 | 197.74 | 19/19 | 135,000 | 140,000 | 140,000 | 100.00 |
| 327 Alturas Ave | Modesto | 2 | 1 (1 0) | 768 | 6250 sf | 1926 | 05/11/17 | 187.50 | 21/21 | 143,900 | 143,900 | 144,000 | 100.07 |
| 221 california | Modesto | 1 | 1 (1 0) | 648 | 0.160ac | 1920 | 06/21/17 | 223.77 | 56/508 | 135,000 | 145,000(V) | 145,000 | 100.00 |
| Listing Count  4 | Averages | | | 726 | | | | 197.13 | 34/153 | 140,725 | 144,475 | 142,250 | 98.51 |
| | High | | | 145,000 | | Low | | 140,000 | | | | | |
| | | | | | | | | | | | Median | 142,000 | |
| Report Listing Count  4 | Report Averages | | | 726 | | | | 197.13 | 34/153 | 140,725 | 144,475 | 142,250 | |



Presented By: Aaron C West
License # 01504116
Primary: 209-484-1651
Secondary: 209-553-8844
Fax: 209-529-8949
Email: aaron@thewestexperience.com
http://www.thewestexperience.com

PMZ Real Estate
License # 00405158
1600 N. Carpenter Road, Ste. A
Modesto CA 95351
Phone: 209-527-2010
Fax: 209-529-8949
http://www.pmz.com

All measurements and all calculations of area are approximate. Information provided by Seller/Other sources, not verified by Broker. All interested persons should independently verify accuracy of information. Provided properties may or may not be listed by the office/agent presenting the information. Copyright © 2017, MetroList Services, Inc. Copyright © 2017, Rapattoni Corporation.  All rights reserved.



To whom it may concern at the Bankruptcy Court,

I have driven by the subject property at 1324 Ritsch Lane. After looking at the comparables, the market value of the property is $150,000.00.  The home is in poor condition with a tarp covering the roof. The back unit has no value as it is red tagged and not done with permits.

Thank you,

Aaron West CRS

Owner

1600 North Carpenter Road, Suite A-1
Modesto, CA 95351
209.553.8844 | aaron@thewestexperience.com

www.thewestexperience.com

# CMA Report

## Sorted by On Market (asc), Area (asc), Price (asc)

Property Type: Residential   Include Property Subtype: 1 House on Lot   Statuses: Active, Active Rel. Clause, Active Short Sale, Active Short Cont.,   Page 1
Active Court Appr., Active Court Cont., Pending, Pending Short LAppvl, Pending Bring Backup, Sold (3/25/2017 or after)   Structure: 800 to 1200 (also includes 0 values) Radius Address: 1324 Ritsch Ln, Modesto, CA 95351  Radius: 0.50 Miles

### Residential
### Sold

| Address | City | Bd | Bth | SqFt | LotSz | Year | Date | $/SqFt | DOM/ CDOM | Orig Price | List Price | Sale Price | SP % LP |
|---------|------|----|----|------|-------|------|------|--------|-----------|------------|------------|------------|---------|
| 1224 Mayette Ave | Modesto | 2 | 1 (1 0) | 1024 | 7200 sf | 1948 | 09/01/17 | 149.41 | 18/18 | 149,900 | 149,900 | 153,000 | 102.07 |
| 919 Wheatley Ave | Modesto | 2-3 | 1 (1 0) | 817 | 0.175ac | 1947 | 07/07/17 | 198.29 | 11/11 | 159,500 | 162,000 | 162,000 | 100.00 |
| 1509 Normandy Dr. | Modesto | 2 | 1 (1 0) | 809 | 0.188ac | 1939 | 08/24/17 | 203.96 | 46/46 | 215,000 | 180,000 | 165,000 | 91.67 |
| Listing Count | 3 | Averages | | 883 | | | | 183.89 | 25/25 | 174,800 | 163,967 | 160,000 | 97.91 |
| | | | High | | 165,000 | | Low | | | 153,000 | | | |
| | | | | | | | | | | | Median | 162,000 | |
| Report Listing Count 3 | | Report Averages | | 883 | | | | 183.89 | 25/25 | 174,800 | 163,967 | 160,000 | |



**Presented By: Aaron C West**
License # 01504116
Primary: 209-484-1651
Secondary: 209-553-8844
Fax: 209-529-8949
Email: aaron@thewestexperience.com
http://www.thewestexperience.com

**PMZ Real Estate**
License # 00405158
1600 N. Carpenter Road, Ste. A
Modesto CA 95351
Phone: 209-527-2010
Fax: 209-529-8949
http://www.pmz.com



All measurements and all calculations of area are approximate. Information provided by Seller/Other sources, not verified by Broker. All interested persons should independently verify accuracy of information. Provided properties may or may not be listed by the office/agent presenting the information. Copyright © 2017, MetroList Services, Inc. Copyright © 2017, Rapattoni Corporation. All rights reserved.